[No. 10645. Department Two. February 21, 1913.]

JAMES R. ATKESON *et al.*, *Respondents*, v. JACKSON ESTATE, *Appellant.*[1]

CARRIERS — PASSENGER ELEVATORS — NEGLIGENT CONSTRUCTION — COMMON USE—EVIDENCE—SUFFICIENCY. There is sufficient evidence of negligence in the construction of a well and cage for an automatic elevator in an apartment house, intended to be used principally by women and children without any attendant, notwithstanding it was such as was commonly used in like buildings, where it appears that the floors projected into the well without any gate, door or protection inside the cage, which could have been easily installed, and that a child fell when the elevator started, falling with its head projecting over the unprotected edge of the cage, where it was caught and crushed by the next floor projecting into the elevator well.

SAME—CONTRIBUTORY NEGLIGENCE OF PASSENGER OPERATING ELEVATOR—EVIDENCE—SUFFICIENCY. In such a case, the mother of a child two years old is not guilty of contributory negligence in attempting to use the elevator with her children, where she entered the elevator with another infant in a baby buggy, carrying a number of packages, her experience with elevators had been limited, and she testified that she did not realize the danger of such an accident.

SAME—PROXIMATE CAUSE OF ACCIDENT — EVIDENCE — SUFFICIENCY. In such a case, recovery is not precluded by the fact that she testified she did not know what caused the child to fall, since falls by children of tender years should have been anticipated, and the failure to guard against the same was the proximate cause.

DEATH — WRONGFUL DEATH — INFANTS — MEASURE OF DAMAGES— STATUTES—EVIDENCE. Under Rem. & Bal. Code, § 184, providing that parents may maintain an action for the death of a child, which is construed to limit the recovery to the value of the child's services to the age of majority, substantial damages may be recovered, without proof of special pecuniary loss, for the death of a baby girl, notwithstanding the parents are in comfortable circumstances financially, and capable of educating the child until the age of majority, which it had been their purpose to do.

Appeal from a judgment of the superior court for King county, Main, J., entered May 29, 1912, upon findings in

[1]Reported in 130 Pac. 102.

favor of the plaintiff, in an action for wrongful death. Affirmed.[1]

*John W. Roberts* (*Ramey & Smith*, of counsel), for appellant.

*A. R. Rutherford* and *Milo A. Root*, for respondents.

FULLERTON, J.—This action was brought by the respondents against the appellant to recover for the alleged negligent killing of their minor child. After issue joined, the action was tried by the court sitting without a jury, and resulted in findings and a judgment in favor of the respondents for the sum of $1,000, and the costs of suit. This appeal is prosecuted from the judgment entered.

The record discloses that the appellant owns a five-story apartment house, situated in the city of Seattle. For the use of its patrons, the house is equipped with the usual stairways, and with an automatic electric elevator. The elevator was so constructed as to be used by the patrons of the house without the aid of an elevator operator. The elevator cage could be brought to any floor of the building by pushing an electric push-button on that floor. When the cage reached the floor, the door to the elevator shaft could then be opened, the passengers could enter the cage, and could direct the cage to the floor on which they intended to alight by pushing another push-button located inside the elevator cage numbered to correspond with such floor. The elevator cage and the shaft or well in which it operated were constructed in the usual way. The elevator cage was held in place by guide shoes, placed at the top and bottom of the cage on each side, which ran over guide strips extending from the bottom to the top of the well. The floors on each of the several stories on the side of the well containing the doors extended into the well some 2½ or 3 inches beyond the perpendicular wall, so that, as the floor of the cage came even with the floors of

[1]Rehearing *En Banc* ordered.

the building, it would be so far flush therewith as to leave an inconsiderable space between the two, while when between the floors there would be a space between the cage and the wall of the elevator well of from three to four inches. There was no means of closing the opening leading into the cage; so that, as the cage ascended and descended, the only obstacle preventing a passenger from falling out of the cage door was the wall of the elevator shaft.

On October 6, 1911, the respondents hired a suite of rooms on the fourth floor of the appellant's house. Their family consisted of a little girl two years and two months old, and a babe in arms. At the time of their entrance into the building, they were instructed as to the manner of operating the elevator by the persons in charge of the building, and informed that they could use it as one of the means of ingress and egress from their rooms to the street. Between the date named and November 7, 1911, a period of some thirty-two days, the mother used the elevator on an average of perhaps four times a week, passing up and down with her two children, carrying the younger one usually in a baby buggy. On the day last named, she left the building with her children for a trip down town to do some marketing, returning later with a number of packages, some of which she carried in her arms and some in the baby carriage. When she reached the elevator, she opened the elevator well door, entered the elevator cage as usual, placed the baby buggy at the far side of the cage, and instructed her daughter to hold onto it. She then closed the door and pushed the button for the floor on which her rooms were situated. As the elevator started, which was somewhat suddenly, the little girl fell forward with her head protruding through the cage door or opening. The mother reached for her at once, but before she could seize her the elevator had reached the second floor and had caught the girl's head between the floor of the cage and the protruding floor beam, crushing her skull and killing her.

The trial court found:

"That by reason of the manner in which the floors projected into the said elevator well, and by reason of the manner in which the edges were constructed, and by reason of the lack of a gate, door or other protection inside of said cage, and by reason of the fact that said elevator was without any operator, but was required to be operated by the passengers, and by reason of the fact that many of the tenants of the apartment house for whose use said elevator was maintained by defendant were women and children, the court finds that the defendant was guilty of negligence in maintaining said elevator for the uses and purposes and in the manner that it was then maintaining said elevator, and that the death of said Mildred Atkeson [the child killed in the elevator] was the direct and proximate result of said negligence."

The appellant contends that the record does not justify the conclusion that the matters herein enumerated convict it of actionable negligence. It contends, with reference to the projection of the floors of the building into the elevator well, and with reference to the want of a gate or door to the opening in the elevator cage, that the evidence shows that in these respects the elevator does not differ from those in common use generally; and that, if it be negligently constructed in this respect, then all elevators are negligently constructed, a conclusion that is not warranted from the mere fact that a child met its death on this elevator; and it argues with reference to the entire charge of negligence that all of the matters therein set forth were as obvious and apparent to the respondents as they were to the appellant or its officers; and that, since they made use of the elevator knowing and appreciating its dangers they cannot, because of the doctrine of contributory negligence, recoup for any injury they may have suffered thereby from the negligence of the appellant.

It must be conceded that, in so far as the evidence discloses, the elevator shaft or well and the elevator cage did not differ in manner of construction from those in common use. In the numerous elevator wells in the city of Seattle, and in

those elsewhere of which the elevator constructors and build-
ers had knowledge, the floors protruded into the elevator well
at the landing places, as did the floors in this instance; and
in only two instances was it shown that there was a gate or
door to the entrance into the elevator cage. It was shown,
also, that elevators operated by electric power did not differ
materially in mechanical construction from those operated by
power generated in the more ordinary ways; and that, in
none of the electrically controlled elevators of which the wit-
nesses had knowledge, was there a door or gate by which the
entrance to the elevator cage could be closed. All the expert
witnesses, however, who testified on the subject of elevator
construction, stated that there was no mechanical reason
why such a door could not be installed, and that it, if prop-
erly fitted, would protect passengers in the elevator from all
such accidents as happened to the child in this instance.

But notwithstanding the fact that the elevator in question
does not differ in construction materially from the elevators
in common use, we think the trial court correctly decided that
the manner in which this elevator was constructed and
operated in this particular instance constituted negligence.
It must be remembered that in this state the operator of an
elevator is a common carrier of passengers, and is held to
the degree of care imposed upon common carriers generally;
they must exercise with reference to the elevators under their
charge the "highest degree of care compatible with their prac-
tical operation." *Perrault v. Emporium Department Store
Co.,* 71 Wash. 523, 128 Pac. 1049; *Edwards v. Burke,*
36 Wash. 107, 78 Pac. 610. And, consistent with this rule,
it is not too much to say that the appellant should have had
a door or gate by which the entrance to the elevator cage
itself could have been closed.

It is not our intention to hold that all elevators now
operated whose cages are without gates or doors are neg-
ligently constructed or operated. That question is not be-
fore us. What we mean to hold is that elevators, intended

for the use principally of women and children, which have no regular elevator operator and have no gate or door by which to close the entrance to the elevator cage, are negligently constructed and operated. It is no argument against this conclusion to say, as the appellant does say, that the users of the elevator might not close the door. Electric elevators, and doubtless other forms, also, could readily be so arranged as to be incapable of being operated until the door or gate should be closed; and, besides, to fail to close such a door would be negligence of the operator and not that of the owner. Without pursuing the argument further, therefore, we conclude that there was sufficient evidence of negligence on this branch of the case to justify the conclusion reached by the trial judge.

Was the mother of the child guilty of contributory negligence? On this question also we think the trial judge reached a correct conclusion. The mother testified that she did not realize that there was danger of an accident such as befell her child, and we can find no inherent improbability in her statement. Her experience with elevators was shown not to be wide, and it is perfectly natural that she would be obvious to dangers that are perfectly apparent to persons of a wider experience, and particularly to those who have to do with machinery and the accidents caused thereby. Elevators to which she had theretofore been accustomed all had regular elevator operators—persons who could and did protect against accidents such as befell her child; and we think it too much to charge her with a want of appreciation of the difference between such elevators and the one in question here, especially as the appellant's officers did not sufficiently appreciate such difference as to warn her thereof.

It is next argued that the cause of the accident is unknown and hence the respondents' case must fail under the authority of *Hansen v. Seattle Lum. Co.*, 31 Wash. 604, 72 Pac. 457; *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Whitehouse v. Bryant Lum. & Shingle Mill Co.*, 50 Wash.

563, 97 Pac. 751, and the kindred cases following the principle of those cases. This contention is based on the statement of the mother of the child to the effect that she did not know what caused the child to fall. But the liability or non-liability of the appellant does not depend on this fact. What caused the child to fall was an immaterial inquiry. The appellant was bound to anticipate that a child of her tender years was likely to fall while in the elevator from any one of a number of causes, and to guard against the danger arising from such fall whatever may have been its cause. The appellant's liability, in other words, rests on the fact that it made no provision to guard against the dangers arising from a person falling while in the elevator, not upon the particular cause of the fall. The cases cited do not oppose this principle. In neither of them was there any evidence showing or tending to show that the negligence charged against the defendant therein was the proximate cause of the injury to the plaintiff; while here, as we say, the proofs fix the proximate cause of the injury as the want of a proper guard to the opening into the elevator cage, and that for this the appellant was primarily responsible.

This action is founded upon § 184 of Rem. & Bal. Code, which reads as follows:

"A father or in case of the death or desertion of his family the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward."

In *Hedrick v. Ilwaco R. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714, we held that the measure of the damages recoverable under this section "is the value of the child's services from the time of the injury until he would have attained the age of majority, taken in connection with his prospects in life, less the cost of his support and maintenance. To which may be added in proper cases the expense of nursing and medical treatment, and in some jurisdictions even funeral expenses."

It was shown in the evidence, and, indeed, the court found, that the parents of this child were in comfortable circumstances financially, capable of giving the child an education, and that it was their purpose to educate her to the extent, at least, of that afforded by graduation from a state high school. Using the somewhat meager wording of the statute, our holding thereunder, and the testimony on behalf of the respondents as here outlined as a premise, the appellant makes the contention that there can be no recovery in favor of the respondents in excess of mere nominal damages. It is argued that, since a girl in this state reaches the age of majority at her eighteenth birthday, and since statistics show that the average age of girls who graduate from the high schools in the state of Washington is in excess of eighteen years, it is idle to say that a girl so graduating prior to that age has an earning capacity in excess of her cost of maintenance; that every father, who has reared a girl to that age and given her an education equivalent to that of graduation from the state high school, knows that the cost of her maintenance must of necessity exceed her earning capacity, and that any different claim is pure fiction.

But this reasoning does not seem to us to be controlling. It may be that, had the daughter reached her majority and had the respondents maintained their present financial condition and carried out their expectations concerning her, the expense of her care, nurture and education would have exceeded her earnings on their behalf. But since adversity and misfortune are sometimes the accompaniments of life, as well as prosperity and success, there is another side to the picture. It is possible that the respondents may lose the property they have accumulated, and at the same time their health and ability to earn money. If such a misfortune should befall them, might it not be said that the daughter's earnings, had she lived, would have greatly exceeded her cost of maintenance? And who shall say that such a misfortune may not

befall them? And if the probability exists, why may not a recovery be based thereon? There is, of course, no certain measure of damages in cases of this character; but notwithstanding this difficulty, the great weight of authority is that a substantial recovery may be had. *Tecker v. Seattle, Renton & S. R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912 B. 842; *Chicago v. Hesing*, 83 Ill. 204, 25 Am. Rep. 378; *Chicago & A. R. Co. v. Becker*, 84 Ill. 483; *Grotenkemper v. Harris*, 25 Ohio St. 510; *Brunswig v. White*, 70 Tex. 504, 8 S. W. 85; *Ohio & M. R. Co. v. Wangelin*, 152 Ill. 138, 38 N. E. 760; *Bradley v. Sattler*, 156 Ill. 603, 41 N. E. 171; *Quill v. Southern Pac. Co.*, 140 Cal. 268, 73 Pac. 991; *Beaman v. Martha Washington Min. Co.*, 23 Utah 139, 63 Pac. 631; *Birkett v. Knickerbocker Ice Co.*, 110 N. Y. 504, 18 N. E. 108; *Boyden v. Fitchburg R. Co.*, 70 Vt. 125, 39 Atl. 771; *Pierce v. Conners*, 20 Colo. 178, 37 Pac. 721, 46 Am. St. 279; *Cleary v. City R. Co.*, 76 Cal. 240, 18 Pac. 269.

Some of the cases here cited are founded on statutes differing slightly from our own, and some lay down slightly differing rules for the measure of damages than is announced by the case cited from this court; but in principle they hold that it is the purpose and intent of the statutes to provide for the award to the parents of substantial damages in all cases where the death of their child is caused by the negligence of another. On another principle, also, there can be a substantial recovery in this case. Where the child killed is of tender years, proof of special pecuniary damages is not necessary to maintain the action or warrant a recovery for more than nominal damages. This we held in *Atrops v. Costello*, 8 Wash. 149, 35 Pac. 620:

"We are satisfied that the great weight of authority sustains the doctrine that judgment can be obtained in the absence of proof of special pecuniary damage. It is true that a great many of the cases which sustain this position are in states where exemplary damages are allowed in cases of this

kind; but the general doctrine is stated on the broad ground that proof of special damages is impracticable, and that no specific loss occasioned by the death of a child is necessary, for the reason that calculations of this kind are within the special province of the jury, and that the jury is as well calculated, knowing the age of the child, her health, her habits, her character, and the station in life of her parents, to judge of the pecuniary loss to the parents, as witnesses who might be called to testify."

To the same effect is *Ihl v. Forty-Second St. etc. R. Co.*, 47 N. Y. 317, 7 Am. Rep. 450, where the following language was used:

"The absence of proof of special pecuniary damage to the next of kin resulting from the death of the child would not have justified the court in non-suiting the plaintiff, or in directing the jury to find only nominal damages. It was within the province of the jury, who had before them the parents, their position in life, the occupation of the father, and the age and sex of the child, to form an estimate of the damages with reference to the pecuniary injury, present or prospective, resulting to the next of kin. Except in very rare instances, it would be impracticable to furnish direct evidence of any specific loss occasioned by the death of a child of such tender years; and to hold that, without such proof, the plaintiff could not recover, would, in effect, render the statute nugatory in most cases of this description. It cannot be said, as matter of law, that there is no pecuniary damage in such a case, or that the expense of maintaining and educating the child would necessarily exceed any pecuniary advantage which the parents could have derived from his services had he lived. These calculations are for the jury, and any evidence on the subject, beyond the age and sex of the child, the circumstances and condition in life of the parents, or other facts existing at the time of the death or trial, would necessarily be speculative and hypothetical, and would not aid the jury in arriving at a conclusion."

The evidence tended to show that the child in the case at bar when she met her death was of sound health and vigorous body and as well developed mentally as the ordinary child of

her age. We think, therefore, that the parents were entitled to recover substantial damages for her loss, and that the trial court did not err in its award.

The judgment is affirmed.

MOUNT and ELLIS, JJ., concur.