[No. 21185.  Department Two.  June 27, 1928.]

BERTHA C. MAWSON, *Respondent*, v. EAGLE HARBOR
TRANSPORTATION COMPANY, *Appellant*.[1]

[1] CARRIERS (77-4)—SHIPPING—SAFETY OF MEANS OF TRANSPORTA·
TION—GANG PLANK.  It is negligence to use a narrow gang
plank without guards or rails, set at an angle of thirty degrees,
requiring passengers to board a vessel and assume a stooping
position to enter the boat.

[2] SAME (77-4).  A passenger, stumbling on a narrow gang plank,
without guard rails for protection in case of loss of balance,
does not admit the sufficiency of the plank without guard rails
by testifying that the fall was caused by stumbling.

[3] SAME (77-4).  Negligence in the use of gang planks without
guard rails for the passenger deck is not disproved by evidence
that other steamers used such planks for the freight deck.

Appeal from a judgment of the superior court for
King county, Jones, J., entered November 22, 1927,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for personal injuries.  Affirmed.

*Geo. L. Palmer,* for appellant.

*Herr, Bayley, Croson & Innis,* for respondent.

ASKREN, J.—This appeal is from a judgment entered
upon a verdict of a jury in favor of the plaintiff in an
action for personal injuries.

The appellant corporation is engaged in the steam-
boat business on Puget Sound carrying passengers and
freight between Eagle Harbor and Seattle.  On De-
cember 5, 1926, the respondent, as a passenger for
hire, started to board the appellant's steamer, the
"Bainbridge," at a landing known as Creosote Dock.
The gangway placed for passengers to use in boarding
the steamer was composed of two planks ten feet long
and about nineteen inches wide, fastened together by

[1]Reported in 268 Pac. 595.

cleats upon the top at intervals of thirteen inches. The gangplank had no guard of any kind along its sides to assist or protect passengers while using it to board the steamer. On the day in question, the tide was at such a level that the gangplank was inclined from the dock to the lower deck of the steamer at an angle of approximately thirty degrees. As passengers proceeded down the gangplank to board the steamer, the passageway to the boat was not high enough for them to enter in an erect position, so employees stood near by and instructed the passengers to "duck your heads." Several passengers preceded respondent with safety, but as she reached the point where she was required to adopt a stooping position, she lost her balance and was precipitated to the deck of the boat, with severe resultant injuries.

[1] Upon appeal, it is urged by appellant that the complaint presented no cause of action and that the case should not have been submitted to the jury. The point specially urged seems to be that there was no negligence in using a gangplank with neither guards nor rail to assist or protect the passengers. With this contention we can hardly agree. The use of a gangplank, constructed as this was, can hardly be said to be the exercise of that high degree of care to provide a reasonably safe means of ingress and egress which a public carrier owes to its passengers for hire. It surely requires no argument to establish the fact that an unguarded plank set at an angle of thirty degrees, one end resting on the dock and the other on the ship, and the use of which requires a passenger to walk down the incline and assume a stooping position to get upon the boat, is decidedly an unsafe method to present to the public for its use.

An almost parallel case is *Burrows v. Lownsdale,* 133 Fed. 250. In that case a passenger was required

to use a gangplank ten feet long, sixteen inches wide and set with cleats upon its surface. It contained no guards or railing of any kind and was set at an angle of thirty degrees. A passenger in using it, either from dizziness or the slipping of his foot, fell and was injured. The court held that the gangplank was an unsafe method for the use of passengers, saying:

"We also agree with the court below that the plank used by the officers of the steamer in question was not a safe method for the discharge of passengers. It is not a sufficient answer to say, as do the appellants, that it is the same kind of a plank that is usually used for the purpose by similar boats plying those waters, and that it has generally, if not always, been found sufficient. Such a plank as that described, extended over the water at such an angle, without any railing, ropes, or guards, is not a reasonably safe means of passage for man, woman or child, of whatever age. The law made it the duty of the carrier to provide a reasonably safe means for discharging its passengers, and the failure of appellants in that regard in the instance in question rendered them clearly liable in damages."

[2] It is also urged that the record discloses that the respondent admitted that the gangplank was a suitable and proper appliance over which to enter the steamer. This is predicated upon an answer to a question propounded to respondent, as follows:

"Q. Then it was the absence of the railing that caused you to fall?

"A. The absence did not cause me to stumble; it was the cause of my falling off. I would have had something to grab on."

Appellant misconceives the effect of the answer. The negligence consisted in requiring the respondent to use a plank of such a character and placed at such an angle that she would likely stumble and have nothing to hold to or steady herself by. Guard rails have

a dual purpose: to steady the passengers as they use the plank, and to assist and protect them in case of loss of balance.

Appellant also lays some stress upon the fact that there is nothing in the record to disclose just what caused the respondent to stumble. But we do not agree that respondent was required to establish the pivotal fact that caused the stumbling, whether it be the fact that she was on an incline; was required to stoop; that the cleats caught her shoe; the natural lack of equilibrium that some people have when walking a narrow pathway in dangerous places; dizziness, or a combination of all of them. The likelihood of passengers falling or stumbling under these conditions was so pronounced that appellant was bound to anticipate such a result. *Atkeson v. Jackson Estate,* 72 Wash. 233, 130 Pac. 102. It is sufficient to say that the proximate cause of respondent's injuries was the use of the unsafe gangplank.

[3] A further contention is made that, since there was testimony that like gangplanks are continuously used by steamers on Puget Sound, there was no negligence in its use. While what has already been said establishes that the plank was an unsafe instrumentality to use, still, the evidence lacks much of indicating that other steamers use like gangplanks for their passengers. The most that can be said for the testimony along this line is that, on the upper deck, there is always used a properly equipped plank with guard rails, because that is known as the passenger deck, while the lower deck is known as the freight deck, and there planks like the one here in controversy are used.

But these facts demonstrate that the plank in question is not primarily intended for passengers, but for freight. If it were equally safe for passengers, why

use a different character of gangplank on the passenger deck? It is perfectly obvious, of course, that planks used for freight cannot have guard rails upon them, for they would interfere with the passage of freight along the plank. On the other hand, the presence of guard rails on the gangplank on the so-called passenger deck indicates the wisdom and necessity of their use for the benefit and safety of passengers.

Finally, it is contended that the verdict of the jury was contrary to and unsupported by the evidence. A careful reading thereof convinces us that the jury's verdict is conclusive upon the contested issues in the case, and that we would not be justified in disturbing the judgment of the trial court.

Affirmed.

FULLERTON, C. J., HOLCOMB, MAIN, and BEALS, JJ., concur.