[No. 5010.　Decided November 14, 1904.]

ADELE EDWARDS, *Respondent,* v. THOMAS BURKE *et al.,*
*Appellants.*[1]

EVIDENCE—EXPERTS—LEADING QUESTIONS—HARMLESS ERROR. It
is not reversible error to permit a leading question to be asked
a physician who was being examined as an expert.

NEGLIGENCE—GUARANTY—FACT OF INSURANCE AGAINST LOSS—
EVIDENCE INCIDENTALLY DISCLOSED. Upon the proper cross-exam-
ination of a witness for defendant in a personal injury case, it is
not reversible error that testimony was incidentally disclosed
tending to show insurance against the loss, where no motion was
made to withdraw the testimony, or admonish the jury not to
consider it, and the respondent did not intend to disclose the
fact, and was in no way to blame therefor.

CARRIERS—NEGLIGENCE—ELEVATORS—DEGREE OF CARE REQUIRED
OF OWNER. The owner of an office building is required to ex-
ercise the highest degree of care in the operation of an elevator
whereby persons are carried, the same as though he were a com-
mon carrier of passengers.

VERDICT—EXCESSIVE. A verdict will not be set aside as ex-
cessive when it does not appear that it was the result of passion
or prejudice.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered July 13, 1903, upon the ver-
dict of a jury rendered in favor of the plaintiff for per-
sonal injuries received in an elevator. Affirmed.

*Piles, Donworth & Howe,* for appellants.

*E. F. Blaine* and *Tucker & Hyland,* for respondent.

DUNBAR, J.—The respondent sued appellants for $10,-
000 for injuries claimed by her to have been caused by the
negligence of appellants in maintaining and operating a
passenger elevator in the Burke building in the city of
Seattle. Upon the trial of the cause, verdict was rendered

[1]Reported in 78 Pac. 610.

by the jury for $4,000. Motion for new trial was made, and denied. Judgment was entered, and appeal taken therefrom.

It would serve no purpose to set forth the circumstances under which the accident causing the injury occurred. On the question of the negligent operation of the elevator, the testimony was conflicting. The jury decided the issues in favor of the respondent. It is urged that the court erred in allowing the respondent to ask the witness, Dr. Eagleson, over appellants' objection, the following question: "Is it not a fact that usually such a severe shock as that, had by a woman, especially of her age, leaves them practically the balance of their lives apprehensive and nervous, and affected by it more or less, so far as their nervous organization is concerned?" This was objected to because it was leading, and in a sense it was leading; but, inasmuch as it was expert testimony which was being introduced, we do not think any reversible error was committed in admitting the question asked.

It is next contended that the court erred in allowing counsel for respondent, over the objection of counsel for appellants, to bring out of the witness Archie Ester, a witness examined in behalf of appellants, the fact that appellants carried liability insurance upon the elevator. If this state of facts were shown by the record it would undoubtedly constitute reversible error, for this court has lately held, in *Iverson v. McDonnell, ante* p. 73, 78 Pac. 202, that evidence tending to show that the defendant in a personal injury case was insured was immaterial, prejudicial, and reversible. The cases supporting that doctrine, cited by the appellants in this case, were considered by the court in the investigation of the case just above referred to, but, while they are applicable to that case, we are

not convinced that they are applicable to the case at bar.
The following is all the testimony upon the subject of in-
surance. Upon cross-examination of appellants' witness
Archie Ester, who had been relating his view of the cir-
cumstances under which the accident took place, the fol-
lowing occurred:

"Q. (By counsel for plaintiff): Did you ever make a
statement as to how this accident occurred, prior to today?
A. I made one to Mr. Lamping. Q. Who is Mr. Lamping?
Mr. Howe: I object, as immaterial. The Court: Answer
the question. Mr. Howe: We except. A. He is the gen-
tleman that insures the elevator. Q. Why did you make
that statement to Lamping? A. He asked me to because—
I don't know the reason why he wanted the statement
from me how the accident occurred."

This is about all that occurred on the subject. The tes-
timony wandered off from this into other fields of in-
quiry. This would scarcely be testimony sufficient to sus-
tain an allegation that the elevator had accident insurance
at the time of this accident. But, even conceding that the
jury might be led to believe from this statement that the
appellants were protected by an insurance company from
accidents which might occur in the operation of the elevator,
it seems to us to be very justly contended by respondent's
counsel that they were not responsible for it. It is asserted
that they did not know who Mr. Lamping was, and that
there was no intention of bringing the question of insur-
ance before the jury. It does appear that, in the exercise
of a proper cross-examination, this testimony incidentally
cropped out. But certainly the question whether or not
the witness had ever before made any statement in rela-
tion to the accident was a proper subject of cross-examina-
tion, and, after eliciting the fact that he had made a state-
ment to a Mr. Lamping, we know of no reason why the

respondent should be prohibited from propounding the very natural inquiry as to who Mr. Jamping was. About all that can be said in this case is that, during the cross-examination, which was properly conducted, testimony was disclosed tending to show the insurance of the elevator. But the respondent in no way having been to blame for this, it seems to us that it would be unjust that she should be, for this reason, subjected to a reversal of her cause. Especially is this true where there was no motion made to withdraw the testimony from the consideration of the jury. And, while we think, with the great weight of authority, that in cases of this kind the damage is largely done when the testimony is once admitted to the ear of the jury, yet, where it appeared in as weak a form as it did in this case, and without fault on the part of the plaintiff, all that could have been done would have been the giving of an admonition by the court to disregard the testimony.

The other errors relate to instructions, and are based upon the theory that the same rule of law in regard to the degree of care will not apply to persons operating an elevator as applies to railroads or other common carriers. The following instruction was offered by the appellants, the refusal to give which is assigned as error, viz.:

"You are instructed that the owner and operator of an elevator in an office building is not a common carrier, and is not held to the highest degree of care to preserve the safety of persons carried therein. The law imposes upon the owners of such elevators the duty of using ordinary care to see that the elevator is in a reasonably safe condition."

The court instead gave the following instruction:

"The liability of the operator of such an elevator is somewhat analogous to that of a common carrier. While

the payment of fare is not required, yet the operator of an elevator, having invited the public to enter, assumes to exercise the highest degree of care in the operation of that elevator that is consistent with practical conditions."

And the following, also, which was excepted to:

"The operator of an elevator· is not an insurer of the lives or limbs of the passengers entering the elevator. He is not bound to perform the impossible, or the impracticable, or the unreasonable; but he is bound to do what can be done, consistent with reason and practicability, to see that persons entering the elevator are protected from accidents which might be avoided, and it is for you to say in this case, so far as the charges against the defendants are concerned, whether, in view of the surroundings at the time, the defendants did, through their 'agent, exercise that degree of care when the plaintiff entered that elevator, and when she attempted to depart from it."

The appellants cite three cases, viz.: *Griffen v. Manice,* 166 N. Y. 188, 51 N. E. 925, 82 Am. St. 630, 52 L. R. A. 922; *McGrell v. Buffalo Office Bldg. Co.,* 153 N. Y. 265, 47 N. E. 305; and *Shattuck v. Rand,* 142 Mass. 83, 7 N. E. 43, in sustentation of his contention. An examination of these cases shows that what is said in them applies to the mechanical construction of the elevator, rather than the mode of operating it. But, whatever may be said of the logic of the distinctions which are attempted to be drawn between care in the construction of an elevator and care in its operation, the overwhelming weight of authority is to the effect that the same degree of care is required in the operation of an elevator as in the operation of a railroad. Mr. Thompson, in his Commentaries on the Law of Negligence, Vol. 1, page 980, under the subject head "Degree of care required in the construction and operation of passenger elevators," says:

"Modern judicial authority assimilates the legal status of the owners or occupiers of buildings who construct or

operate passenger elevators therein, whereby persons are conveyed from one story in the building to another, to that of a common carrier of passengers and imposes upon such persons the same extraordinary obligation of care and skill;"

citing *Marker v. Mitchell*, 54 Fed. 637, affirmed in *Mitchell v. Marker*, 62 Fed. 139, 25 L. R. A. 33; *Goodsell v. Taylor*, 41 Minn. 207, 42 N. W. 873, 16 Am. St. 700, 4 L. R. A. 673; *Hartford Deposit Co. v. Sollitt*, 172 Ill. 222, 50 N. E. 178, 64 Am. St. 35; *Field v. French*, 80 Ill. App. 78; *Kentucky Hotel Co. v. Camp*, 97 Ky. 424, 30 S. W. 1010; *Treadwell v. Whittier*, 80 Cal. 574, 22 Pac. 266, 13 Am. St. 175, 5 L. R. A. 498; *Southern Bldg. etc. Assn. v. Lawson*, 97 Tenn. 367, 37 S. W. 86, 56 Am. St. 804; and many other cases too numerous for citation. Proceeding, the author says:

"The reason for this rule need not be enlarged upon. Obviously there can be no distinction between a general undertaking to carry passengers vertically and the similar undertaking to carry them horizontally. The carrier in each case is the bailee, so to speak, of human beings, and has their lives in his custody."

And this text is adopted and followed by the overwhelming, if not universal, weight of authority. So that we think there was no error committed by the court in the instructions refused or given.

It is also assigned as error that the verdict was excessive. But, from an investigation of the record in this case, we are unable to determine that the verdict was the result of passion or prejudice, and do not feel at liberty to disturb the judgment of the jury in that respect.

There being no reversible error discovered, the judgment will be affirmed.

FULLERTON, C. J., and HADLEY, MOUNT, and ANDERS, JJ., concur.