[No. 13458-6-II.   Division Two.   February 20, 1992.]

MARGARET H. MURPHY, *Appellant*, v. MONTGOMERY ELEVATOR COMPANY, *Respondent*.

*Sal A. Mungia* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*John G. Bergmann* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent.

PETRICH, C.J. — Margaret Murphy sued Montgomery Elevator Company for injuries she claims resulted when she fell while stepping out of an elevator at Humana Hospital, her place of employment. After a jury verdict for Mont-

gomery Elevator (Montgomery), Murphy appeals, claiming instructional errors. She argues that the trial court erred in not giving the jury her proposed instruction on res ipsa loquitur and in not giving her proposed instruction that Montgomery be held to the highest standard of care, *i.e.*, that of a common carrier, to discover and correct a dangerous condition on an elevator it inspected, maintained, and repaired under contract with Humana Hospital. We affirm.

Murphy contended at trial that while she was stepping out of the elevator on March 30, 1987, the elevator dropped 2 to 4 inches after opening and that this caused her fall. Humana Hospital had a limited service contract with Montgomery to maintain the elevator. Humana did not service the elevators; Montgomery maintained and repaired them.

During the trial, Murphy presented the expert testimony of Joseph Cunningham, a former city elevator inspector. He testified that elevators do not suddenly drop if they have been properly maintained and that the likely cause of the misleveling was a failure in the "suicide switch". Ken Durin, a Montgomery employee, and Carl Burkland, Montgomery's expert witness, testified that a properly functioning elevator should not mislevel by more than one-half inch.

# I
## RES IPSA LOQUITUR

Contending that the exact cause of the malfunction was indeterminable but was the result of improper service and maintenance, Murphy proposed a res ipsa loquitur instruction.[1] Res ipsa loquitur applies if the following conditions are met:

(1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's

---

[1] Murphy's proposed instruction 12 provided: "When an agency or instrumentality which produces injury or damage is under the control of the defendant at the time of injury or damage to plaintiff and the injury or damage which occurred would ordinarily have not resulted if the defendant had used ordinary care, then, in the absence of satisfactory explanation, you may infer, that the defendant was negligent and that such negligence produced the injury or damage complained of by the plaintiff."

negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 359, 382 P.2d 518 (1963).[2] Whether the doctrine applies in a given case is a question of law. *Zukowsky v. Brown*, 79 Wn.2d 586, 592, 488 P.2d 269 (1971). *See also Brown v. Dahl*, 41 Wn. App. 565, 580-83, 705 P.2d 781 (1985) (court should give res ipsa loquitur instruction when plaintiff presents substantial evidence of each of its elements, even though defendant presented weighty, competent exculpatory evidence). Once the trial court determines that the doctrine applies, the defendant has the duty to come forward with exculpatory evidence to overcome the inference of negligence. *Metropolitan Mortgage & Sec. Co. v. Washington Water Power*, 37 Wn. App. 241, 243, 679 P.2d 943 (1984).

■ ■ The trial court did not err in refusing Murphy's proposed instruction. Murphy failed to satisfy the second condition of this doctrine, which requires the plaintiff to present evidence connecting the defendant with the negligence. When the plaintiff fails to show that a defendant had exclusive control of the object causing the injury, res ipsa loquitur does not apply. *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 58, 785 P.2d 815 (1990) (John Doe donated blood, defendant collected it, and hospital transfused it). *See also Jackson v. Criminal Justice Training Comm'n*, 43 Wn. App. 827, 830-31, 720 P.2d 457 (1986) (not only must defendant have exclusive control, but plaintiff must have corresponding lack of control to avoid the injury); *Hughes v. King Cy.*, 42 Wn. App. 776, 784, 714 P.2d 316 (plaintiff failed to present evidence that County had any control over private drainage system), *review denied,* 106

---

[2]We need not address the issue of what effect the adoption of comparative negligence has on the third element of res ipsa loquitur. *See* 6 Wash. Prac., WPI 22.01 comment, at 206 (3d ed. 1989).

Wn.2d 1006 (1986); *Cusick v. Phillippi*, 42 Wn. App. 147, 155-56, 709 P.2d 1226 (1985) (absence of exclusive control when investors could have directed earlier sale of apples, and evidence established multiple possible causes of browning).

Murphy contends that Montgomery had exclusive control of the elevator because it was solely responsible for its maintenance and repair and because it had sole access to the elevators. Montgomery, on the other hand, contends that because Humana owned, operated, and supervised Montgomery's work, Montgomery did not have exclusive control. Under their contract, Montgomery was to service the elevators twice a month, and Humana was to notify Montgomery if other service work or repair needed to be made.

Franklin Simmons, the director of engineering for Humana Hospital at the time of Murphy's accident, testified that Montgomery had a service contract with Humana, that none of Humana's employees did any type of preventive maintenance on the elevators, that Humana did no repair work on the elevators, and that Humana did not help Montgomery in making any repairs. He also testified that he would periodically inspect Montgomery's work, look at the elevator and elevator rooms to insure they were in proper order, and occasionally watch Montgomery service the elevators.

Ken Durin, Montgomery's service man who worked on Humana's elevators, testified that he went to Humana twice a month for 2 hours at a time, that he inspected, lubricated, and cleaned the parts, and that he would check the controller, which included the "suicide switch". He also testified that if a part needed replacement he would go to Humana's maintenance department for authorization, that Humana had to authorize any additional time or labor that needed to be done and that Montgomery billed Humana for that time and those parts.

Because Humana retained some control over the elevators, and because its contract with Montgomery was only a

limited service contract, Montgomery did not have exclusive control of the elevators. Murphy's argument that Montgomery was the only entity which did any work on the elevators is insufficient under the reasoning of *Cusick v. Phillippi, supra,* which held that the failure of the investors to exercise their discretion did not give Phillippi exclusive control of the apple harvest. Similarly here, the failure of Humana to exercise its discretion did not give Montgomery exclusive control of the elevators.

## II
### COMMON CARRIER STANDARD OF CARE

Murphy also contends that because Montgomery was responsible for the inspection and maintenance of the elevator, the trial court erred in not instructing the jury that Montgomery is held to the standard of care of a common carrier, the same standard owed to a business invitee by the building owner.[3] A common carrier owes the highest degree of care toward its passengers that is commensurate with the practical operation of its conveyance at the time and place in question. *Houck v. UW,* 60 Wn. App. 189, 194, 803 P.2d 47 (citing *Benjamin v. Seattle,* 74 Wn.2d 832, 447 P.2d 172 (1968)), *review denied,* 116 Wn.2d 1028 (1991).

Citing *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964) and *Heggen v. Seattle,* 47 Wn.2d 576, 288 P.2d 830 (1955), Murphy contends that a maintenance company should be held to the same standard of care as an owner or operator. Neither authority supports her position. In *Dabroe v. Rhodes Co.,* 64 Wn.2d at 434-35, the court held that a department store has a duty to use the highest standard of care consistent with the practical operation of its escalator

---

[3]Murphy's proposed instruction 20 provided: "An elevator company that assumes a duty to inspect, maintain, and repair an elevator pursuant to a contract may be liable for injuries or damages suffered by a party other than the person with whom it had a contractual duty, *i.e.,* a passenger, because of its failure to correct conditions of which it has knowledge or failure to use the highest degree of care to discover and correct a dangerous condition."

"to protect its passengers from the danger of injury from malfunctions or defects of which they [the defendants] knew or should have anticipated from facts and circumstances known to them." In *Heggen v. Seattle*, 47 Wn.2d at 582-84, the City had exclusive control of both the operation and maintenance of its buses. The court said:

> Under the law as it exists in this state, a carrier in the maintenance and operation of its vehicles is required to exercise the highest degree of care consistent with the practical operation of its business, and in the exercise of such care is required to inspect its equipment for defects.

*Heggen*, at 583. Neither of these cases imposes a common carrier duty on a third party defendant.

We agree with the reasoning of the Illinois Supreme Court in *Jardine v. Rubloff*, 73 Ill. 2d 31, 382 N.E.2d 232 (1978). That court could find no reason to impose a higher degree of care on the elevator maintenance company than on any defendant charged with negligence. The court said:

> The pattern jury instruction on ordinary care instructs the jury to consider a defendant's conduct in the context of the circumstances shown by the evidence. (IPI Civil No. 10.02 (2d ed. 1971).) It thus takes into account any special circumstances, such as the nature of elevators, which would require greater care than in other situations.

*Jardine*, at 42. In the present case, the court instructed the jury that

> Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.
>
> Ordinary care means the care a reasonable person would exercise under the same or similar circumstances.

We see no reason to impose the standard of care of a common carrier on a company whose contract with the owner was a limited service contract. The court instructed the jury to consider the circumstances in deciding what a reasonably careful person would have done. This is sufficient. *See also*

*Wilson v. Hibernia Nat'l Bank*, 517 So. 2d 1206 (La. Ct. App. 1987) (duty is to exercise reasonable care), *cert. denied*, 520 So. 2d 425 (La. 1988); *Davlan v. Otis Elevator Co.*, 816 F.2d 287 (7th Cir. 1987) (degree of care of ordinary prudent elevator maintenance under same or similar circumstances); *Abernathy v. Otis Elevator Corp.*, 533 P.2d 971 (Okla. 1975) (in absence of exclusive control, only liability would be for negligence in failure to perform maintenance contract); *DeLeon v. Otis Elevator Co.*, 610 S.W.2d 179 (Tex. Civ. App. 1980) (higher standard of care only applies to those furnishing elevators for the convenience and use of their invitees). *See generally* Annot., *Liability of Installer or Maintenance Company for Injury Caused by Failure of Automatic Elevator To Level at Floor*, 63 A.L.R.3d 996 § 4, at 1004 (1975); 13 C.J.S. *Carriers* § 2 (1990). *But see Norman v. Thomas Emery's Sons, Inc.*, 7 Ohio App. 2d 41, 218 N.E.2d 480 (1966) (type of contract not noted: because elevators operate automatically without an attendant, owners and those who service and inspect must act with a higher degree of care); *Otis Elevator Co. v. Embert*, 198 Md. 585, 84 A.2d 876 (1951) (full maintenance contract: because improperly maintained elevator is dangerous instrumentality, those who own and maintain elevator owe the plaintiff a higher standard of care). We find no error.

Judgment affirmed.

MORGAN and SEINFELD, JJ., concur.