[No. 27628-0-I.    Division One.    May 4, 1992.]

ANTELIA SORAIDA PRUNEDA, *Appellant,* v. OTIS ELEVATOR COMPANY, *Respondent.*

*William J. Bender, Linda B. Eide,* and *Skellenger, Bender, Mathias & Bender,* for appellant.

*John G. Fritts* and *David M. Jacobi,* for respondent.

COLEMAN, J. — Antelia Pruneda appeals the judgment dismissing her personal injury action against Otis Elevator Company, claiming that the trial court erred by giving the jury certain jury instructions, by refusing to give certain

requested instructions, and by excluding a portion of the maintenance contract. We affirm.

In 1988 Antelia Pruneda worked for the Seattle-King County Health Department on the 14th floor of the Public Safety Building in Seattle. The City owns the building, which contains several aged, mechanically driven elevators. Otis Elevator Company provided service and maintenance to those elevators pursuant to its "full maintenance contract" with the City. According to Ray Hays, an Otis repair superintendent, the full maintenance contract meant that "[n]o matter what goes wrong with the elevators, cables, contacts, bearings, [Otis] would take care of [the problem] under [the] contract during normal working hours."

Steve Wood, an Otis mechanic, was assigned to perform maintenance on the elevators in the Public Safety Building. He made weekly inspections which included checking the armature, brushes, and commutator on each elevator. Those mechanical parts affected how the elevators leveled on each floor.

On September 6, 1988, Wood worked on the elevators in the building from 9 a.m. until 8:30 p.m. He spent most of that time working on elevator car 6. He inspected the armature on car 6 and determined that it did not need to be cleaned that day. Consequently, he did not clean it. If it had been dirty, he would have cleaned it. When he left the building that evening, car 6 was working properly.[1]

On September 9, 1988, Pruneda left her office at 4:15 p.m. and pushed the button in the lobby on the 14th floor to call for an elevator. As car 6 opened, Pruneda began to enter it but fell, landing on her knees and wrist. Pruneda never actually saw what she tripped on as she entered the elevator, but she said that her foot "hooked on" the floor of the elevator. Pruneda did not know whether the elevator

---

[1] Otis states in its brief that the city log indicated that car 6 was "working fine" on September 7, 1988, the day after Wood serviced it. Although that log is not part of the appellate record, it apparently was admitted into evidence at trial. Pruneda does not dispute Otis's representation of the September 7 entry in the log.

was level or not when she stepped into it. She allegedly injured her knees, hips, hands, and back.

Virginia Bell, a co-worker, was in the 14th floor lobby at the time Pruneda fell but was facing away from the elevators when she heard the door of car 6 open. Upon turning around, she saw Pruneda "in the process of falling." According to Bell, Pruneda's "right leg was extended. The elevator doors were open. The elevator floor was raised 6 to 8 inches above the floor of the 14th floor." She also noticed that the elevator "went down and up, staccato, [in a] jerky motion." Pruneda was in the elevator when Bell moved to help her. A few days before Pruneda's fall, Bell had noticed that car 6 had been misleveling (*i.e.*, the door opened when the car was above floor level) and surging or hesitating.

Another health department employee, Margaret Lealofi, was working at the reception desk on the 14th floor of the building when Pruneda fell into the elevator. One of Lealofi's duties was to notify the building's maintenance department whenever anything was amiss on the floor. On the day Pruneda fell, Lealofi had called the maintenance department two or three times to notify it that car 6 had been misleveling, but no one had come to repair it or prevent it from operating. Although Lealofi did not see Pruneda fall, she heard a "thump" that she recognized as the sound of someone falling, and she saw Bell helping Pruneda in the elevator. Lealofi then called the maintenance department again to notify it that someone had been injured in car 6. Nothing in the record indicates that Otis was notified of any problem with the elevators between the time Steve Wood repaired them on September 6 until Pruneda fell.

Pruneda filed a negligence action against Otis for damages she allegedly sustained from her encounter with the elevator. She claimed that Otis owed her the duty of exercising the "highest degree of care" in maintaining the elevators and that Otis breached that duty. Pruneda believed that Otis was bound to that stringent standard of care because the City, as the owner and operator of the

elevator, was a common carrier required to exercise that standard, and the City had delegated its duty to Otis through the parties' full maintenance contract. Pruneda also maintained that she was a third party beneficiary of that contract and that she suffered damages as a result of Otis's alleged breach.

Among Pruneda's proposed jury instructions rejected by the trial court were the following:

Proposed Instruction 2:
In the circumstances of this case, you are instructed to apply the following definition of negligence: It was the duty of the defendant to exercise the highest degree of care consistent with the practical operation of these elevators to protect passengers from the danger of injury from malfunctions or defects of which defendant knew or should have anticipated from facts and circumstances known to it. [Citing for support] *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 433, 393 P.2d 317 (1964) and *Brown v. Crescent Store[s], Inc.*, 54 Wn. App. 861, 863, 776 P.2d 705 (1989).

Proposed Instruction 5:
You are instructed that the City of Seattle, as the owner of the Public Safety Building, can delegate its duty to exercise the highest degree of care with regard to the operation and maintenance of its elevators to an elevator maintenance company. [Citing for support] *Sheridan v. Aetna Cas. & Sur. Co.*, 3 Wn.2d 423, 429, 439, 100 P.2d 1024 (1940).

Proposed Instruction 6:
If you find that the defendant breached its contractual obligation to regularly and systematically examine, adjust, lubricate as required, and if conditions warrant, repair, or replace the parts of the Public Safety Building elevators which [a]ffect and control leveling, you may consider that the breach of those obligations is a violation of a legal duty owing to a third person who was injured by using the elevator. [Citing for support] *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 334, 582 P.2d 500 (1978).

The trial court also refused to give Pruneda's proposed instructions 3 (a review of Pruneda's negligence theories), 7 (the full maintenance contract defined Otis's duties "to the traveling public"), 8 (Otis's duty was commensurate with the individual characteristics of known passengers), and 14 (burden of proof when no affirmative defense is presented). (See

appendix A for the text of proposed instructions 3, 7, 8, and 14.)

However, the trial court did instruct the jury, *inter alia*, about Pruneda's claims and Otis's affirmative defenses (instruction 6) as well as the issues of burden of proof (instructions 7, 15), standard of care (instructions 9, 10, 16), and contributory negligence (instructions 11, 12, 18). (See appendix B for the text of those instructions.) Those instructions indicated that the City, as a common carrier, was bound to exercise the highest degree of care (instruction 16) and that negligence "is the failure to exercise ordinary care" (instruction 9). The jury concluded on the special verdict form that the City, but not Otis, had been negligent. The trial court subsequently dismissed Pruneda's action against Otis. Pruneda appeals.

We initially consider whether an elevator maintenance company will be held to the "highest degree of care" standard when it enters into a full maintenance contract with an elevator owner/operator. In arguing that an elevator maintenance company entering into such a contract should be held to the "highest degree of care" standard, Pruneda relies primarily upon *Engstrand v. Hartnett*, 106 Wash. 404, 180 P. 132 (1919). Otis argues that the maintenance company is held to the less stringent standard of "ordinary care".

In *Engstrand*, the owners of an apartment building maintained and operated an elevator in the building for the tenants' use. A tenant sued the owners for injuries that she allegedly sustained from the malfunctioning elevator. The jury found in favor of the owners. On appeal, the court noted in dictum that

[i]n this state, the operator of an elevator is a common carrier of passengers, and is held to the degree of care imposed upon carriers generally. *One who maintains or operates an elevator* must exercise with reference thereto the "highest degree of care compatible with their practical operation."

(Italics ours.) *Engstrand*, at 406 (quoting *Atkeson v. Jackson Estate*, 72 Wash. 233, 130 P. 102, *aff'd on rehearing*, 74 Wash. 700, 134 P. 175 (1913)). A reading of *Atkeson* reveals

that it does not refer to "one who maintains" an elevator when it states the pertinent law. Instead, that court said,

> [i]t must be remembered that in this state *the operator of an elevator* is a common carrier of passengers, and is held to the degree of care imposed upon common carriers generally; they must exercise with reference to the elevators under their charge the "highest degree of care compatible with their practical operation."

(Italics ours.) *Atkeson*, at 237. *See also Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 432, 392 P.2d 317 (1964) (defendant owner/operator of store and escalator held to highest degree of care standard); *Perrault v. Emporium Dep't Store Co.*, 71 Wash. 523, 526, 128 P. 1049 (defendant owner/operator of department store elevator held to highest degree of care standard), *aff'd on rehearing*, 74 Wash. 699, 134 P. 189 (1913); *Edwards v. Burke*, 36 Wash. 107, 111-12, 78 P. 610 (1904) (defendant Burke maintained and operated a passenger elevator in "the Burke building" and was held to common carrier standard; presumably defendant was also the owner of the building). *But see Norman v. Thomas Emery's Sons, Inc.*, 7 Ohio App. 2d 41, 43, 218 N.E.2d 480, 482 (1966) ("operating owners and ones under contract to service and inspect [elevators] must act with a higher degree of care.").

Thus, the Washington case law cited by Pruneda does not specifically hold a party to the highest standard of care when that party maintains or services an elevator, unless that person is also the owner and operator of the elevator, *i.e.*, a common carrier. Nonetheless, Pruneda asks this court to decide that a party must exercise the standard of care of a common carrier upon contractually obligating itself to provide full maintenance for elevators owned and operated by another party.

Several reasons militate against reaching such a holding. First, there is no direct Washington authority for that proposition. As noted above, the case law cited by Pruneda specifically involves elevator owners and operators who maintained their elevators. *See Dabroe*, at 433; *Engstrand*, at 405; *Edwards*, at 107; *see also Brown v. Crescent Stores,*

*Inc.*, 54 Wn. App. 861, 862-63, 776 P.2d 705 (1989).[2] Further, although the Ohio case cited by Pruneda held an elevator maintenance company to the same standard of care as a common carrier, it did so without reference to authority and with only a cursory analysis. *See Norman*, at 43.

Moreover, such a rule would prove impractical in its application. As the Illinois Supreme Court indicated when it addressed the same issue, there is "no reason to impose a higher degree of care on [an elevator maintenance company] than that imposed on any defendant charged with negligence." *Jardine v. Rubloff*, 73 Ill. 2d 31, 41, 382 N.E.2d 232, 237 (1978).

We agree with *Jardine*. An elevator repair company is in a different position than an owner/operator of an elevator. The repair company contracts to maintain the elevators, but unless it places a full-time employee on guard at the building, it cannot anticipate when a given elevator might malfunction. The owner/operator can do so, however, through a system such as the one in place at the Public Safety Building. Certain employees, such as Margaret Lealofi, were instructed to notify building maintenance whenever they noticed something wrong in the building, like a malfunctioning elevator. Upon such notification, the building maintenance personnel can determine whether to notify the repair company and whether the elevator should be shut down until repairs are made. A repair company typically is not able to operate that way. Consequently, a repair company that contracts to maintain elevators in another party's building should not be deemed a common carrier and

---

[2] In *Brown*, the owner/operator of the Crescent Store elevator was sued for damages sustained by an elderly customer who regularly used the elevator. Otis Elevator Company had maintained and repaired the elevator, and Crescent joined Otis as a third party defendant. The trial court granted both defendants' motions for summary judgment. On appeal, the court reversed as to Crescent, holding that a factual issue existed as to Crescent's duty toward the elderly plaintiff, given that an owner/operator of an elevator is held to the highest standard of care because of its status as a common carrier. *Brown*, at 868-69. However, the appellate court did not address the trial court's ruling dismissing Otis as the third party defendant and, consequently, never reached the issue of whether the stricter standard of care should be extended to the nonowner elevator maintenance company.

should not bear a common carrier's burden of exercising the highest degree of care. We so hold. Thus, it was not error for the trial court to exclude Pruneda's proposed instruction 2 (or the other related proposed instructions) or to instruct the jury as it did on this issue.[3]

The next issue that Pruneda presents is whether the trial court erred by refusing to instruct the jury pursuant to proposed instruction 5. That instruction states that the City could contractually delegate its duty as a common carrier to exercise the highest degree of care. Given our analysis above, that proposed instruction was properly rejected. The City, as a common carrier, had the duty to exercise the highest degree of care and the jury was so instructed. The fact that the City contracted with Otis to perform the actual maintenance and servicing of the elevators does not mean that Otis assumed the common carrier standard of care in its contract. This is particularly apparent in light of the contract terms which specifically stated that Otis would "use *all reasonable care* to maintain the elevator equipment in proper operating condition[.]" (Italics ours.) The instructions given to the jury in this regard properly instructed that Otis had a duty to act with reasonable care.

In addition, the indemnification clause in the maintenance contract[4] in no way obligated Otis to perform under the common carrier's standard of care.[5] It simply obligated

---

[3]We note that this holding is in accord with the recent Division Two opinion of *Murphy v. Montgomery Elevator Co.*, 65 Wn. App. 112, 828 P.2d 584 (1992), which was ordered to be published on April 15, 1992. Although *Murphy* involved a limited service maintenance contract rather than a full service contract as in the present case, our reasoning is equally applicable to both types of contracts.

[4]The excluded clause reads: "The contractor shall protect, indemnify, and save the City of Seattle harmless from and against any damage, costs, or liability for injuries or deaths to persons or damage to or destruction of property arising out of the contractor's negligent acts or omissions in the performance of the work under this purchase contract."

[5]*Sheridan v. Aetna Cas. & Sur. Co.*, 3 Wn.2d 423, 429, 439, 100 P.2d 1024 (1940), the case upon which Pruneda relies, is not to the contrary because there is no indication in that case that the insurer — which the court found had assumed the duty of inspecting the owner's elevator — would be held to a common carrier's standard of care.

Otis to indemnify the City if the City were held liable for damages resulting from Otis's negligent acts or omissions. Thus, the indemnification clause was irrelevant to Pruneda's delegation theory. In sum, the trial court did not err by excluding proposed instruction 5 (or the other related proposed instructions) and omitting evidence of the indemnification clause.

Pruneda next contends that the trial court erred by instructing the jury about contributory negligence according to jury instructions 11, 12, 15, and 18. However, any error involving those instructions could only arise if the jury found that Otis had been negligent. It did not. Consequently, we need not address that contention.

■ Finally, Pruneda contends that she was a third party beneficiary to the contract between Otis and the City so that it was error for the trial court to refuse Pruneda's proposed jury instruction 6. However, nothing in the contract indicates that Otis intended to assume any contractual obligations to anyone other than the City. *See Burke & Thomas, Inc. v. International Org. of Masters,* 92 Wn.2d 762, 767, 600 P.2d 1282 (1979) ("creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract").

Further, the jury concluded that Otis had not acted negligently. Therefore, even if Pruneda were a third party beneficiary to the contract, there is no basis for her to recover damages from Otis, given the jury's conclusion. Because there is no evidence that Otis failed to perform according to its duty of reasonable care, Pruneda's reliance upon *Kelley* is misplaced. *See Kelley,* at 334 ("an affirmative duty assumed by contract may create a liability to persons not party to the contract, where failure to properly perform the duty results in injury to them."). We hold that the trial court did not err by refusing to give proposed instruction 6 (or other related proposed instructions) and did not err by instructing the jury as it did.

The judgment of the trial court is affirmed.

## Appendix A

Proposed (Rejected) Jury Instructions
(Nos. 3, 7, 8, & 14)

Proposed Instruction No. 2: (see page 484)

Proposed Instruction No. 3:

The plaintiff claims that the defendant was negligent in the following respects:

(1) Failed to properly examine, adjust and repair the leveling function on Elevator No. 6 in general.

(2) Failed to properly repair the leveling function on Elevator No. 6 on September 6, 1988.

(3) Failed to properly respond to request to fix leveling function on Elevator No. 6 on September 9, 1988.

The plaintiff claims that defendant's conduct was a proximate cause of injuries and damage to plaintiff.

Proposed Instruction No. 5: (see page 484)

Proposed Instruction No. 6: (see page 484)

Proposed Instruction No. 7:

You are instructed that the terms of the contract entered into by defendant Otis Elevator Company with the City of Seattle define its duties to the traveling public. [Citing as support] *Otis Elevator Co. v. Embert*, 198 Md. 585, 84 A.2d 876 (1951) [and citing as contrasting law] *Hillas v. Westinghouse Electric Corp.*, 120 N.J. Super. 105, 293 A.2d 419, 63 A.L.R.3d 986 (1972) (trial judge not required as a matter of law to instruct the jury on the duty of the maintenance company to inspect and test the elevator, since the jury had before it the contract and could thus determine the negligence, if any, on the part of the company in the performance of its obligations thereunder).

Proposed Instruction No. 8:

You are instructed that the defendant's duty, in the circumstances here, was commensurate with the age, size and physical condition of passengers of which it had knowledge. [Citing as support] *Brown v. Crescent Store[s, Inc.]*, 54 Wn. App. 861, 863, 776 P.2d 705 (1989); *see also Benjamin v. Seattle*, 74 Wn.2d 832, 834, 447 P.2d 172 (1968); *Sullivan v. Seattle Electric Co.*, 44 Wash. 53, 86 P. 786 (1906).

Proposed Instruction No. 14:

The plaintiff has the burden of providing each of the following propositions:

First, that the defendant acted, or failed to act, in one of the ways claimed by the plaintiff and that in so acting, or failing to act, the defendant was negligent;

Second, that the plaintiff was injured;

Third, that the negligence of the defendant was a proximate cause of the injury to the plaintiff.

If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for the plaintiff. On the other hand, if any of these propositions has not been proved, your verdict should be for the defendant.

## APPENDIX B

### Jury Instructions Given and Appealed From:

Instruction No. 6:

1. The plaintiff claims that the defendant was negligent in failing to exercise ordinary care to properly maintain Elevator 6 and that such negligence was a proximate cause of injuries and damage to plaintiff. The defendant denies these claims.

2. The defendant claims as an affirmative defense that the plaintiff was contributorily negligent in failing to exercise ordinary care in entering the elevator. The defendant claims that plaintiff's conduct was a proximate cause of plaintiff's own injuries and damage. The plaintiff denies these claims.

3. In addition, the defendant claims that the City of Seattle was negligent for failing to use the highest degree of care consistent with the practical operation of its elevators. The defendant claims that the City of Seattle's conduct was a proximate cause of plaintiff's injuries and damages.

4. The defendant further denies the nature and extent of plaintiff's claimed injuries and damage.

The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matters claimed and you are to consider only those matters which are established by the evidence. These claims have been outlined solely to aid you in understanding the issues.

Instruction No. 7:

The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted, or failed to act, in one of the ways claimed by the plaintiff and that in so acting or failing to act, the defendant was negligent;

Second, that the plaintiff was injured;

Third, that the negligence of the defendant was a proximate cause of the injury to the plaintiff.

The defendant has the burden of proving the following propositions:

First, that the plaintiff acted, or failed to act, in one of the ways claimed by the defendant, and that in so acting or failing to act, the plaintiff was negligent;

Second, that the negligence of the plaintiff was a proximate cause of the plaintiff's own injuries and was therefore contributory negligence;

Third, that the City of Seattle acted, or failed to act, in one of the ways claimed by the defendant, and that in so acting or failing to act, the City of Seattle was negligent.

Instruction No. 9:

Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.

Instruction No. 10:

Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances.

Instruction No. 11:

Contributory negligence is negligence on the part of a person claiming injury or damage which is a proximate cause of the injury or damage complained of.

If you find contributory negligence, you must determine the degree of such negligence, expressed as a percentage, attributable to the person claiming such injury or damage.

Instruction No. 12:

Every person has a duty to see what would be seen by a person exercising ordinary care.

Instruction No. 15:

Before a percentage of negligence may be attributed to any entity which is not party to this action, the defendant has the burden of proving each of the following propositions:

First, that the entity was negligent; and

Second, that the entity's negligence was a proximate cause of the injury to the plaintiff.

Instruction No. 16:

At the time of the occurrence in question, the City of Seattle was a common carrier.

A common carrier has a duty to its passengers to use the highest degree of care consistent with the practical operation of its type of transportation and its business as a common carrier. Any failure of a common carrier to use such care is negligence.

Instruction No. 18:

In an action involving the negligence of more than one party, you must determine what percentage of the total negligence is attributable

to each party which proximately caused the injury to plaintiff. The court will provide you with a special verdict form for this purpose.

Your answers to the questions in the special verdict form will furnish the basis by which the court will apportion damages, if any, to the parties.

FORREST and BAKER, JJ., concur.