[No. 15664-8-III. Division Three. December 16, 1997.]

ALLISON B. KIMBALL, *Appellant*, v. OTIS ELEVATOR
COMPANY, *Respondent*.

*Bruce W. Gore* and *Robert R. Rowley* of *Casey, Gore & Grewe*, for appellant.
*Todd R. Startzel* of *Powell & Morris, P.S.*, for respondent.

SCHULTHEIS, A.C.J. — Allison Kimball claims she hurt her back when she stepped out of an elevator—manufactured, installed and maintained by Otis Elevator Company—that had stopped about six inches above floor level. After a jury found the elevator was neither negligently designed nor negligently maintained, the court entered judgment in favor of Otis. Ms. Kimball contends the court (1) should not have limited evidence of misleveling solely to the injury-causing elevator, which was one in a group of five identical elevators; (2) should not have admitted a deposition that did not comply with CR 32(a)(5)(B); (3) should have summarily ruled that Otis is a common carrier, held to a higher standard of care; (4) should have instructed the jury on the doctrine of res ipsa loquitur; (5) should have declared a mistrial when defense counsel, during closing argument, mentioned the lack of evidence that the other four elevators had misleveled; and (6) should not have allowed evidence that Ms. Kimball suffered from a neuromuscular disorder affecting her shoulders. We affirm.

Ms. Kimball was employed as a phlebotomist at Sacred Heart Medical Center (SHMC) from December 1989 until October 1992. Five public elevators located near the main lobby transport members of the public and hospital staff from one floor to another. On the evening of April 29, 1991,

Ms. Kimball boarded elevator 2 on the ninth floor and pushed the button for the second floor, so that she could deliver a freshly drawn blood sample to the blood bank. Carrying her tray in front of her, she faced the door and watched the floor numbers as the elevator descended. When the indicator for the second floor lit up and the doors opened, she stepped out. According to Ms. Kimball, the floor was not where she expected it to be, level with the elevator, but was lower. The unexpected step down jolted her, causing her knees to buckle. She recovered without falling, checked her tray and delivered her blood sample. She was in a hurry, so she did not look back at the elevator, but she later estimated the distance of the drop as about six inches. After she delivered the blood, she mentioned the incident to her supervisor and indicated her back was starting to hurt. At her supervisor's direction, Ms. Kimball filled out an accident report and went to the emergency room.

On April 26, 1994, Ms. Kimball filed this lawsuit, alleging negligent design and maintenance of the elevator. Otis introduced evidence that the elevator met state safety standards, was regularly maintained and was repaired as needed. When a problem arose, SHMC maintenance personnel would call Otis. Otis had not been notified of any misleveling problems with the elevator. Had there been a mechanical failure, it would not have self-corrected, and there had been no such failure around the time of the accident. It was also improbable that there could be some problem that would allow intermittent misleveling of six inches. One of Otis's experts examined the elevator's wiring diagrams and all the other evidence, and testified that in his opinion the only way the accident could have happened as Ms. Kimball alleged would have been if she used the emergency button inside the elevator. Ms. Kimball testified she did not touch the button. The jury found in favor of Otis.

Ms. Kimball challenges three of the court's decisions on admissibility of evidence. A trial court's decision admitting or excluding evidence is reviewed for an abuse of

discretion, which occurs only when the exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. *Reese v. Stroh*, 128 Wn.2d 300, 310, 907 P.2d 282 (1995); *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

Problems with other elevators. To prove a general pattern of negligent maintenance, Ms. Kimball sought to introduce SHMC maintenance logs showing other elevators in the group had experienced misleveling problems and the testimony of three witnesses: Dr. Vivian Moise, who observed at least one incident of misleveling among the elevators, most probably elevator 2; SHMC employee Brian Anders, who would have testified he had seen the public elevators mislevel more than 100 times over a six-year period; and Baron Cheffer, who would have testified he had seen the public elevators mislevel five or six times in the months before the accident, although he was not sure that elevator 2 was one of them.

 Because Otis maintained the five elevators as a group, the evidence was arguably relevant on the issue of negligent maintenance. But any error in excluding the evidence was harmless.

> The exclusion of evidence which is cumulative or has speculative probative value is not reversible error. The evidence need not be identical to that which is admitted; instead, harmless error, if error at all, results where evidence is excluded which is, in substance, the same as other evidence which is admitted.

*Havens*, 124 Wn.2d at 169-70 (citations omitted). Ms. Kimball was permitted to introduce evidence that elevator 2 had misleveled on numerous other occasions. Although Mr. Cheffer did not testify, Dr. Moise testified she observed elevator 2 mislevel at about the time of the accident, at least she was 60 percent sure it was elevator 2, and Mr. Anders testified he saw elevator 2 mislevel at least 25 to 30 times during the two years before the accident.

Ms. Kimball complains the ruling also prevented her from proving Otis had notice of misleveling problems, but

there is no evidence that Mr. Cheffer or Mr. Anders reported their observations to Otis. Mr. Anders testified he did not notify Otis, he notified only SHMC; however, SHMC was not a defendant and there is no evidence that Mr. Anders's complaints were passed on to Otis. Dr. Moise testified she did not notify anyone and there was a question whether the incident she observed was before or after Ms. Kimball's accident. We cannot determine whether the excluded maintenance reports would show Otis had notice of misleveling problems with the other elevators because they are not in the record before us. In any event, the evidence would be cumulative because the Otis employee responsible for maintaining the elevators, Milton Sawyer, acknowledged people approached him at SHMC and complained about the elevators misleveling. He was unable to remember any reports confined to elevator 2, so the complaints obviously involved other elevators. Ms. Kimball was thus able to present evidence (Mr. Sawyer's testimony) that Otis was on notice of numerous misleveling incidents involving the bank of elevators.

Finally, to cure any possible prejudice caused by an improper remark during defense counsel's closing argument, the court advised the jury that it had excluded all evidence regarding the other elevators. The court's curative instruction further minimized any possible prejudice caused by the court's evidentiary ruling.

■ Dr. Richard McCollum's deposition testimony. Ms. Kimball sought exclusion of Dr. McCollum's testimony on the basis she was not warned, as required by CR 32(a)(5)(B),[1] that his deposition was being taken by defense counsel to preserve the testimony for trial. We need not

---

[1]CR 32 provides:

"(a) **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

". . . .

decide whether CR 32(a)(5)(B) was violated because the deposition testimony related solely to the issue of damages, which the jury never reached, and not to the issue of liability; therefore, any error was harmless. *Hizey v. Carpenter*, 119 Wn.2d 251, 270, 830 P.2d 646 (1992); *American Oil Co. v. Columbia Oil Co.*, 88 Wn.2d 835, 841-42, 567 P.2d 637 (1977). Nevertheless, at the request of both parties, we address the merits of Ms. Kimball's argument.

CR 32 governs the use of depositions in court proceedings. Subsection (a)(3)(B) allows the deposition of a witness to be used by any party for any purpose when the witness resides out of the county and more than 20 miles from the place of trial. Dr. McCollum resides out of the county and more than 20 miles from Spokane. Subsection (a)(5) allows the use of the deposition of an expert witness under two special circumstances, both of which refer to CR 26(b)(5) provisions regarding discovery of facts known and opinions held by experts, acquired or developed in anticipation of litigation or for trial. The critical question, therefore, is whether Dr. McCollum was an "expert witness."

■ ■ Under CR 26(b) generally, only opinions acquired and developed in anticipation of litigation are expert opinions; professionals who have acquired facts and opinions not in anticipation of litigation, but from some other involvement, are not expert witnesses. *See Baird v. Larson*, 59 Wn. App. 715, 719-20, 801 P.2d 247 (1990); *Peters v. Ballard*, 58 Wn. App. 921, 930, 795 P.2d 1158, *review denied*, 115 Wn.2d 1032 (1990). It is undisputed that Dr. McCollum was not hired by either party, and that he reviewed Ms. Kimball's medical records and examined her in May 1992 to evaluate her medical condition in rela-

"(5) The deposition of an expert witness may be used as follows:

". . . .

"(B) The deposition of a health care professional, even though available to testify at trial, taken with the expressly stated purpose of preserving the deponent's testimony for trial, may be used if, before the taking of the deposition, there has been compliance with discovery requests made pursuant to rules 26(b)(5)(A)(i), 33, 34, and 35 (as applicable) and if the opposing party is afforded an adequate opportunity to prepare, by discovery deposition of the deponent or other means, for cross examination of the deponent."

tion to her Department of Labor and Industries claim. That was well before this lawsuit was filed by Ms. Kimball. Dr. McCollum was not an expert witness and the court did not abuse its discretion in admitting his deposition under CR 32(a)(3)(B).

*Dr. James Lea's deposition testimony.* The evidence that Ms. Kimball had an inherited neuromuscular disorder of the shoulders related solely to the issue of damages. Given the jury's verdict of nonliability, any error in admitting the testimony is harmless. *Hizey*, 119 Wn.2d at 269-70.

■ Next, Ms. Kimball contends the court should have summarily ruled that Otis was required to exercise the high standard of care of a common carrier based on its full-service maintenance contract. She concedes Division One rejected the same argument in *Pruneda v. Otis Elevator Co.*, 65 Wn. App. 481, 828 P.2d 642 (1992), which holds elevator maintenance companies with full-service contracts will not be held to the common carrier standard unless they keep a full-time employee on site to repair defective elevators. But she urges this court to adopt Division Two's reasoning in *Murphy v. Montgomery Elevator Co.*, 65 Wn. App. 112, 828 P.2d 584 (1992), which she asserts is authority for a general rule holding elevator maintenance companies to a standard of reasonable care for the elevators it maintains, except when they operate under full-service contracts, in which case the elevator maintenance company will be held to the higher standard of a common carrier.

*Murphy* does not hold an elevator maintenance company with a full-service contract will be held to the higher standard of a common carrier. That issue was not before the court since the defendant had only a limited service contract with the building owner. And nothing in the *Murphy* opinion suggests the outcome would have been different had the contract been a full-service one. *Pruneda*, 65 Wn. App. at 486-87, gives several reasons for rejecting Ms. Kimball's position: there is no direct Washington authority supporting it, it would be impractical in its application, and

an elevator repair company is in a different position than an elevator owner/operator with continuous access and capability to monitor the elevator. Ms. Kimball does not explain why this court should reject *Pruneda* in favor of her position, and we decline to do so.

■ ■ Ms. Kimball also contends the court should have instructed the jury on the doctrine of res ipsa loquitur because Otis had exclusive control over maintenance of the elevator, even if it did not have exclusive control over the elevator itself. Res ipsa loquitur, meaning "it speaks for itself," is a method of proof that entitles a plaintiff to an inference of negligence under certain circumstances. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §§ 39, 40 (5th ed. 1984). The doctrine is to be used sparingly because it, in effect, spares the plaintiff the necessity of establishing a complete prima facie case against the defendant. *Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 789, 791-92, 929 P.2d 1209 (1997).

■ ■ Res ipsa loquitur applies if three conditions are met: (1) the accident or occurrence producing the injury is of a kind that does not ordinarily happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.[2] *Murphy*, 65 Wn. App. at 113-14. The doctrine has no applicability when there is evidence that the accident could occur without negligence on the defendant's part. *Adams v. Western Host, Inc.*, 55 Wn. App. 601, 606, 779 P.2d 281 (1989). Otis produced evidence that the accident could have occurred without negligence on its part; pushing the emergency stop button within the elevator, for

---

[2]With the advent of comparative fault, the third element has little relevance and is generally merged into the second element. *Marshall v. Western Air Lines, Inc.*, 62 Wn. App. 251, 261, 813 P.2d 1269, *review denied*, 118 Wn.2d 1002 (1991).

example, would cause misleveling.[3] The court properly refused Ms. Kimball's res ipsa loquitur instruction.

Finally, Ms. Kimball contends the court abused its discretion by giving a curative instruction, instead of declaring a mistrial, after defense counsel referred in closing argument to the absence of witnesses testifying about misleveling problems with other SHMC elevators. In the alternative, she argues she should have been permitted to introduce the excluded evidence under the open door rule to rebut the impression that the other elevators worked perfectly.

 Trial courts have broad discretionary powers in conducting a trial and dealing with irregularities that arise. They should grant a mistrial only when nothing the court can say or do would remedy the harm caused by the irregularity or, in other words, when the harmed party has been so prejudiced that only a new trial can remedy the error. *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994); *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979). In determining the effect of an irregularity, a reviewing court considers whether (1) it was serious, (2) it involved cumulative evidence, and (3) the trial court properly instructed the jury to disregard it. *Johnson*, 124 Wn.2d at 76.

Here, the comment was admittedly improper, but it was isolated and the court not only instructed the jury to disregard it, it also told them it had excluded such evidence (suggesting there was, in fact, evidence that the other elevators had misleveled). Ms. Kimball cannot now complain that she was not permitted to introduce the inadmissible evidence after defense counsel "opened the door" because she never made any effort to do so.

The judgment of the superior court is affirmed.

KURTZ and BROWN, JJ., concur.

---

[3]The fact that Ms. Kimball denied pushing the button is no more conclusive than Otis's denial that it was negligent in its maintenance of the elevator.