[No. 20144-9–III.   Division Three.   April 4, 2002.]

KEITH A. PACHECO, *Respondent*, v. JOHN R. AMES, *Appellant*.

*John C. Versnel III* and *James M. Owen, Jr.*, for appellant.

*Patrick K. Fannin* and *J. David Evans*, for respondent.

SWEENEY, J. — This is a dental negligence case. There is no mystery about what happened. The defendant, Dr. John R. Ames, operated on the lower left side of patient Keith A. Pacheco's mouth in an attempt to extract a wisdom tooth. As it turns out, there was no wisdom tooth in the lower left portion of Mr. Pacheco's mouth. The factual dispute presented to the jury was not over what happened—Dr. Ames operated on the wrong side of Mr. Pacheco's mouth. The question for the jury was rather whether that conduct was excused by Dr. Ames's reasonable reliance on x rays for-

warded to his office by Mr. Pacheco's primary dentist, Dr. Thomas Whitfield. And there was ample expert testimony from both sides on this factual dispute. The legal question before us is whether, given this factual scenario, the court erred by allowing the jury to infer negligence based on its res ipsa loquitur instruction. We conclude that it did and reverse and remand for retrial on the question of liability only.

## FACTS

Keith Pacheco's dentist, Dr. Thomas Whitfield, diagnosed Mr. Pacheco with three impacted wisdom teeth. As part of the process he x-rayed Mr. Pacheco's mouth. He referred Mr. Pacheco to Dr. John Ames for extraction of the teeth. He also sent his x rays to Dr. Ames. The x rays contained an artifact. The artifact looked something like this:

*See* Plaintiff's Ex. 17. Dr. Ames interpreted the artifact on the x ray as identifying the lower right jaw. He oriented the x ray according to this interpretation and operated on the lower left jaw. But Mr. Pacheco had no wisdom tooth in his lower left jaw. The surgery caused numbness to Mr. Pacheco's lip and jaw.

Both Mr. Pacheco and Dr. Ames presented expert testimony. Dr. Ames's expert testified that it was reasonable for Dr. Ames to rely on the x rays and that his interpretation of the ambiguous x-ray marking was not negligent. Mr. Pacheco's expert testified that Dr. Ames violated the standard of care by not clarifying the x ray prior to the surgery. Clerk's Papers (CP) at 63.

At Mr. Pacheco's request, the court instructed the jury on the elements of res ipsa loquitur. The jury returned a verdict in Mr. Pacheco's favor.

## RES IPSA LOQUITUR

Dr. Ames assigns error to the res ipsa loquitur instruction. He contends he showed that Mr. Pacheco's injury could have occurred without his negligence. He also argues that the instrumentality causing the injury here was the x ray which Dr. Whitfield prepared. Mr. Pacheco counters that this is not the type of injury that normally occurs in the absence of someone's negligence and therefore the res ipsa loquitur instruction was appropriate.

STANDARD OF REVIEW

The trial court has discretion whether to give a particular jury instruction. *Boeing Co. v. Key*, 101 Wn. App. 629, 632, 5 P.3d 16 (2000), *review denied*, 142 Wn.2d 1017 (2001); *MacSuga v. Spokane County*, 97 Wn. App. 435, 441, 983 P.2d 1167 (1999). But the question whether the doctrine of res ipsa loquitur is applicable to a specific factual scenario is a question of law. *Zukowsky v. Brown*, 79 Wn.2d 586, 592, 488 P.2d 269 (1971); *Brown v. Dahl*, 41 Wn. App. 565, 580, 705 P.2d 781 (1985). Our review is then de novo. *State v. Munguia*, 107 Wn. App. 328, 339, 26 P.3d 1017 (2001), *review denied*, 145 Wn.2d 1023 (2002).

PURPOSE OF RES IPSA LOQUITUR

Res ipsa loquitur allows an inference of negligence by a defendant. *Kimball v. Otis Elevator Co.*, 89 Wn. App. 169, 177, 947 P.2d 1275 (1997). It does so when the plaintiff is not in a position to explain the mechanism of injury, and the defendant is. *Morner v. Union Pac. R.R.*, 31 Wn.2d 282, 291, 196 P.2d 744 (1948). The instruction effectively requires the defendant do so. *Murphy v. Montgomery Elevator Co.*, 65 Wn. App. 112, 114, 828 P.2d 584 (1992). The idea is that, because the defendant has the sole and exclusive control of the agency or instrumentality which caused the injury and is in the best position to explain the cause of injury, the

defendant should be required to produce evidence to explain the injury. *Morner*, 31 Wn.2d at 291. Res ipsa loquitur then uses circumstantial evidence to prove a defendant's breach of duty. *Douglas v. Bussabarger*, 73 Wn.2d 476, 482, 438 P.2d 829 (1968); *Tate v. Perry*, 52 Wn. App. 257, 262, 758 P.2d 999 (1988).

For example, a patient who suffered a paralyzed arm after undergoing abdominal surgery was entitled to a res ipsa loquitur instruction, because her injury was an extraordinary occurrence and the defendant failed to explain how the accident occurred. *Horner v. N. Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 360, 382 P.2d 518 (1963). And waking from general anesthesia a month after surgery with apparent brain damage entitles the plaintiff to an inference of negligence. *Pederson v. Dumouchel*, 72 Wn.2d 73, 81-82, 431 P.2d 973 (1967). Likewise, a plaintiff whose property was damaged by a broken water main was entitled to a res ipsa loquitur instruction. *Metro. Mortgage & Sec. Co. v. Wash. Water Power*, 37 Wn. App. 241, 244-47, 679 P.2d 943 (1984).

ELEMENTS OF RES IPSA LOQUITUR

■ To support a res ipsa loquitur instruction, a plaintiff must show that:

(1) the cause of the injury is of a kind that does not ordinarily happen without someone's negligence,

(2) the injury was caused by an agency or instrumentality within the exclusive control of the defendant, and

(3) the plaintiff was in no way responsible for the cause of the injury.

*Kimball*, 89 Wn. App. at 177.

There is no dispute that the plaintiff did not contribute to the injury here. And, in fact, the necessity of this third element is questionable since the advent of comparative fault. *Kimball*, 89 Wn. App. at 177 n.2. At issue here are the first two elements.

■ Here in Washington, three general situations have been identified as sufficient to establish the first element of res ipsa loquitur:

(1) the act causing the injury is so palpably negligent that negligence may be inferred as a matter of law,

(2) the general experience and observation of mankind teaches that this is not a result that would be expected without negligence, or

(3) proof of expert witnesses in an esoteric field creates an inference that negligence caused the injuries.

*ZeBarth v. Swedish Hosp. Med. Ctr.*, 81 Wn.2d 12, 19, 499 P.2d 1 (1972).

APPLICATION OF THE DOCTRINE

The res ipsa loquitur instruction is appropriate when there is no explanation and the result (the injury) cannot be explained other than by negligence. But that is not the case here.

There is no mystery, no magic, surrounding the injury to Mr. Pacheco's jaw. Dr. Ames injured his jaw when he operated on the wrong side of his mouth. What Dr. Ames did, and the subsequent result of what he did, is not materially disputed.

Dr. Ames says that his conduct was not negligent. He argues that it was excusable because he reasonably relied upon x rays supplied by Dr. Whitfield. Those x rays suggested that one of the wisdom teeth he was expected to extract was on the lower left side of Mr. Pacheco's jaw. He provided expert evidence to support his theory of the case.

■ We find two problems with the application of the doctrine of res ipsa loquitur here. First, one of the "instrumentalities" contributing to this injury is the x ray supplied by Dr. Whitfield. And control over that instrumentality was not exclusively Dr. Ames's. Dr. Whitfield prepared and sent the x ray.

Second, while at first blush Dr. Ames's conduct may appear to be negligent, the question of negligence was

submitted to the jury. This was because the experts disagreed over whether his conduct was negligent. And that conflict gave rise to a question of fact for the jury. The doctrine of res ipsa loquitur has "no applicability when there is evidence that the action could occur without negligence on the defendant's part." *Kimball*, 89 Wn. App. at 177. Mr. Pacheco argues that Dr. Ames's negligence is clear. "If there is direct evidence as to the precise cause of the injury, and all the facts and circumstances attending upon the occurrence appear, it is said that there is no basis or foundation for application of the res ipsa loquitur doctrine." 1 STUART M. SPEISER, THE NEGLIGENCE CASE: RES IPSA LOQUITUR § 1:3, at 9 (1972). But if there is no question of fact, if experts could not disagree (agree) on whether Dr. Ames's conduct was negligent, then the matter is resolvable on summary judgment. *See Basin Paving Co. v. Mike M. Johnson, Inc.*, 107 Wn. App. 61, 68, 27 P.3d 609 (2001) (summary judgment is proper when reasonable minds can reach but one result), *review denied*, 145 Wn.2d 1018 (2002).

Mr. Pacheco invites us to look at these facts and accept a tempting assertion: The oral surgeon tried to extract a wisdom tooth from an area where none existed. As lay people, we might well be tempted to accept that assertion as proof of negligence. The problem with this easy assumption is the presence of expert testimony that the x rays were, at least, ambiguous and, at worst, incompetently labeled. There was also expert testimony that Dr. Ames reasonably relied upon them. Specifically, Dr. John Evans testified:

> Well, my understanding is, of the clinical situation was, that he was relying on that x-ray [sic] and the marking there, to orient him with regard to where those impacted teeth were.
>
> And if I were presented with that radiograph, with the markings on it, I would have oriented it exactly the same way. It seems to me there is a pretty clear-cut L and a pretty clear-cut R on that x-ray [sic]. And those had to be made intentionally, and the only interpretation I can place on those marks is that it means lower right.

Report of Proceedings (RP) at 9. The factual question of whether that reliance was reasonable, or not, is one for the jury.

The facts leading up to the injury are all well known and essentially undisputed. Dr. Ames operated on Mr. Pacheco. And this exploration into Mr. Pacheco's jaw caused the injury. RP at 90, 228. Everyone agrees Dr. Ames's decision to drill in Mr. Pacheco's lower left jaw was based on his interpretation of and his reliance on the x rays taken by Dr. Whitfield. RP at 9, 87; CP at 61, 81-82. The issue is simply whether or not that conduct was professionally excusable. Both sides presented conflicting evidence on the question. So there is nothing left for a jury to infer. Accordingly, instructing the jury on res ipsa loquitur was error. *See* SPEISER, *supra*.

## CONCLUSION

■ No error is assigned to the damage award. Accordingly, the case is reversed remanded for retrial on the question of liability alone. *Hough v. Ballard*, 108 Wn. App. 272, 289, 31 P.3d 6 (2001) (retrial is limited to issue of liability only when damage award is not challenged).

SCHULTHEIS and KURTZ, JJ., concur.

Review granted at 147 Wn.2d 1015 (2002).