IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAN RHODES, an individual; KEYSTONE WINDOWS AND DOORS, a Washington corporation,<br><br>      Respondents/Cross-Appellants,<br><br>      v.<br><br>EMILY SHARP RAINS and MICHAEL RAINS, individually and their marital community; RAINS LAW GROUP, a professional limited liability company,<br><br>      Appellants/Cross-Respondents,<br><br>HEATHER CHRISTIANSON and JOHN DOE CHRISTIANSON, and their marital community,<br><br>      Defendants. | No. 79173-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Michan Rhodes and her now defunct company, Keystone Windows and Doors (Keystone), sued Emily Rains,[1] her husband, Michael Rains, and Emily's business, Rains Law Group, for alleged wrongs committed during the course of a business relationship. This is the third appeal following two separate trials. In the first trial, a jury found that Emily breached her fiduciary duty to Keystone and Rhodes. In the second trial and at issue in this appeal, a jury found the Rainses liable to Keystone under the Washington Consumer Protection Act (CPA), chapter 19.86 RCW.

---

[1] For clarity, we refer to Emily and Michael by their first names throughout.

Citations and pin cites are based on the Westlaw online version of the cited material.

Following the jury's verdict, the trial court offset the jury's damages award by the award in the first trial. The Rainses then moved for judgment as a matter of law, or in the alternative, for new trial and/or remittitur. The trial court denied the motions.

The Rainses appeal the orders denying their motions for judgment as a matter of law and a new trial. And Keystone appeals the trial court's entry of judgment, which offset the damages. Because Keystone presented sufficient evidence for a reasonable jury to find for it on each element of its CPA claim, we conclude that the trial court did not err when it denied the Rainses' motion for judgment as a matter of law. Additionally, because there were no irregularities at trial that prejudiced the Rainses, the trial court did not err when it denied the motion for a new trial. However, we conclude that the trial court abused its discretion when it offset the damages award. Therefore, we remand for reinstatement of the full damages award.

FACTS[2]

In 2011, Rhodes was told that Keystone would soon go bankrupt. In need of assistance and having received a referral for Emily's company, Rhodes approached Emily for help with Keystone's accounting and planning. Emily promised that she could help with Keystone's financial situation and that she would provide expert financial services. After Rhodes researched Emily's

---

[2] Keystone moves this court to strike various parts of the record and the Rainses' briefs. We exercise our discretion to review the record and briefs in their entirety. See, e.g., RAP 10.7 (providing this court discretion to accept an improper brief).

credentials, Rhodes hired Emily as a consultant and later an employee of Keystone.[3] Emily also hired Heather Christianson, her sister, to assist with accounting and Michael to assist with information technology. Various conflicts occurred between Emily, Michael, and Rhodes, the details of which are disputed. Following one such issue, Emily resigned on October 17, 2012. Keystone later went bankrupt.

In December 2012, Rhodes and Keystone sued the Rainses and Rains Law Group for legal malpractice, breach of fiduciary duty, and violation of the CPA. Emily counterclaimed that Keystone willfully withheld her wages. On the Rainses' motion for summary judgment, the trial court dismissed the legal malpractice and CPA claims. In 2014, Keystone's breach of fiduciary duty claim and Emily's wage claim proceeded to trial (2014 trial). A jury found Emily, acting through Rains Law Group, liable to Keystone or Rhodes. And it found Keystone liable to Emily for withheld wages. It awarded Keystone $88,764.38 for Emily's conduct as an in-house officer of Keystone and $7,685.29 for her conduct as an outside attorney. The jury also awarded Emily $18,780.08 for willfully withheld wages. After adding interest and attorney fees, doubling the wage claim damages, and calculating the offset, the trial court entered a net judgment of $40,162.89 for Keystone.

In 2016, Rhodes and Keystone appealed the order granting summary judgment in favor of the Rainses. We held that there were "genuine issues of

---

[3] Rhodes later testified that she did not hire Emily as an employee of Keystone but that Emily made herself an employee.

material fact with respect to all five elements of" the CPA claim. Rhodes v. Rains, 195 Wn. App. 235, 238, 381 P.3d 58 (2016) (Rhodes I). We therefore reversed and remanded for trial on Keystone and Rhodes' claims that Emily, Michael, and Rains Law Group violated the CPA. Rhodes I, 195 Wn. App. at 251.

In August 2018, the CPA claim proceeded to trial (2018 trial). A jury found that Emily and Michael violated the CPA and owed damages to Keystone totaling $80,000. Accordingly, Keystone submitted its proposed entry of judgment. In their reply, the Rainses argued that the trial court should offset the damages in the 2018 trial by those in the 2014 trial because the damages were duplicative. On entering judgment, the court held, "With regards to the $80,000, the Court finds that that is indeed duplicative, and . . . [it] should be offset by the damages that were awarded in the first trial." The trial therefore awarded Keystone $0.00, except that the court awarded Keystone $25,000 in enhanced damages.

In October 2018, the Rainses moved for judgment as a matter of law, and/or a new trial and/or remittitur. The trial court denied the Rainses' posttrial motions. And in November 2018, the Rainses and Keystone appealed the trial court's rulings and entry of judgment regarding the CPA claim (current appeal).

In June 2019, the Rainses moved the 2014 trial court for relief from the jury verdict and final judgment pursuant to CR 60. The trial court denied the motion, finding that the motion was untimely. The Rainses appealed, presenting three claims of error: (1) the trial court abused its discretion when it rejected her CR 60(b) motion as untimely and meritless, (2) the trial court erred when it

4

denied her motion to vacate the 2018 trial, and (3) we should recall our mandate from the appeal of the 2016 appeal. Rhodes v. Rains, No. 80571-1-I, slip op. at 6 (Wash. Ct. App. June 22, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/805711.pdf (Rhodes II). We held that the Rainses' CR 60(b) motion was untimely and that the trial court therefore did not err. Rhodes II, slip op. at 9. Similarly, we concluded that the Rainses' motion to recall our mandate from the 2016 appeal was untimely.[4] Rhodes II, slip op. at 9. Therefore, we affirmed the trial court's order denying the CR 60 motion and denied the motion to recall our mandate.

Before us in this appeal, the Rainses contend that the trial court erred when it denied her posttrial motions, and Keystone contends that the trial court improperly offset damages.

ANALYSIS

Judgment as a Matter of Law[5]

The Rainses contend that the trial court erred when it denied their motion

---

[4] In this appeal, the Rainses seek to recall the mandate for other reasons. Because we denied the motion in our most recent opinion, we decline to address novel theories here. See, e.g., Reeploeg v. Jensen, 81 Wn.2d 541, 546, 503 P.2d 99 (1972) (noting that to "'require courts to consider and reconsider cases at the will of litigants would deprive the courts of that stability which is necessary in the administration of justice'" (quoting Kosten v. Fleming, 17 Wn.2d 500, 505, 136 P.2d 449 (1943)).

[5] Keystone contends that the law of the case doctrine applies and prevents review of the Rainses' motion for judgment as a matter of law. We disagree. "[T]he law of the case doctrine precludes this court from reconsidering the same legal issue already determined as part of a previous appeal." Lian v. Stalick, 115 Wn. App. 590, 598, 62 P.3d 933 (2003). In Rhodes I, we reviewed—and the 2014 trial court granted—the motion for summary judgment based on affidavits that were not presented to the jury as evidence in the 2018 trial.

for judgment as a matter of law under CR 50. Specifically, they contend that Keystone failed to present sufficient evidence that (1) the Rainses engaged in any unfair or deceptive acts (2) that affected the public interest, (3) which caused an injury to Keystone. We disagree.

We review orders denying judgment as a matter of law de novo. Leren v. Kaiser Gypsum Co., 9 Wn. App. 2d 55, 70, 442 P.3d 273 (2019), review denied sub nom. Leren v. Elementis Chems., Inc., 194 Wn.2d 1017 (2020). Under CR 50, "[i]f . . . a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find . . . for that party with respect to that issue," then the court may grant judgment as a matter of law "against [that] party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue." In other words, the court must conclude, "'as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party.'" Paetsch v. Spokane Dermatology Clinic, P.S., 182 Wn.2d 842, 848, 348 P.3d 389 (2015) (quoting Indus. Idem. Co. of Nw v. Kallevig, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990)). And substantial evidence is defined "as evidence 'sufficient . . . to persuade a fair-mind, rational person of the truth of the declared premise.'" Davis v. Microsoft Corp., 149 Wn.2d 521, 531, 70 P.3d 126 (2003) (alteration in original) (quoting Helman v. Sacred Heart Hosp., 62 Wn.2d 136, 147, 381 P.2d 605 (1963)).

---

Therefore, there is no basis upon which we could apply the law of the case doctrine.

Additionally, in ruling on a CR 50 motion, we interpret the evidence and all reasonable inferences therefrom "'most strongly against the moving party and in the light most favorable to the opponent.'" Lock v. Am. Family Ins. Co., __ Wn. App. 2d __, 460 P.3d 683, 693 (2020) (quoting Goodman v. Goodman, 128 Wn.2d 366, 371, 907 P.2d 290 (1995)). To this end, the Rainses "admit[ ] the truth of [Keystone's] evidence and all inferences that can be reasonably drawn therefrom." Lock, 460 P.3d at 693. And to prevail on its CPA claim, Keystone was required to provide sufficient evidence to "prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009).

With regard to unfair and deceptive practices, Keystone presented sufficient evidence for a jury to find Emily and Michael engaged therein. Emily promised to provide expert financial assistance to Keystone. She also described herself online in various biographies and company profiles as having a "strong financial accounting background" and as having managed and directed multimillion dollar companies successfully "through various growth stages and transitions."[6]

But Emily did not do "any of the financial work that . . . needed to be done for" Keystone, including failing to pay vendors, insurance, gas cards, and phone

---

[6] The Rainses contend that "Keystone is equitably estopped from raising a new allegation on appeal" with regard to website information. Keystone presented this argument throughout this litigation. Therefore, the Rainses' contention is unpersuasive.

bills. Emily provided no financial reports to Rhodes, overbilled Keystone for her work, and failed to properly maintain financial records. Furthermore, Emily admitted at trial that she took no accounting courses as an undergraduate, never worked in accounting, and was never a certified professional accountant. She also hired her husband, Michael, despite Rhodes being uncomfortable, and, without Rhodes' knowledge, she hired her sister, Heather. Emily attempted to gain ownership interests in the company and held herself out as treasurer of Keystone in the registration details with the Secretary of State Corporations Division. And in the spring of 2012, Emily told Rhodes that the company was doing well and increased Emily and Rhodes' salaries. Finally, the Rainses also convinced Rhodes to sign a number of blank checks for their use.

In short, Emily's promise to provide expert financial management services had "the capacity to deceive a substantial portion of the public." Panag, 166 Wn.2d at 47 ("A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public."). And based on the evidence described above, which we have taken as true and in favor of Keystone, there was sufficient evidence for a reasonable juror to find that Emily and Michael mislead or misrepresented their skill or expertise, which was the reason why Rhodes hired Emily. See Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226, 135 P.3d 499 (2006) ("Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance.").

With regard to the public interest element, a plaintiff "establish[es] that [an]

8

act or practice is injurious to the public interest" by evidence that the act injured others, or has or had "the capacity to injure others." RCW 19.86.093(3)(a), (c). Here, taking the evidence in the light most favorable to Keystone, there was substantial evidence that Keystone's claim affects the public interest. Specifically, at trial, Keystone presented testimony of Kyle Duce, who had previously worked with Emily and Michael. Duce testified that Emily and Michael similarly injured his business when Emily asserted that she could assist with his restaurant's taxes and accounting. After being hired, Emily did not pay the restaurant's taxes for three months, charged the restaurant nearly double what Duce expected as the cost for her accounting services, never provided financial statements, and took a 10 percent ownership interest in the restaurant when Duce was unable to pay the bill. Additionally, Emily convinced Duce to hire Michael. Therefore, Keystone presented sufficient evidence for a reasonable juror to find that the Rainses' actions injured or had the capacity to injure others.[7]

With regard to injury and causation, "[i]t is sufficient to establish [that] the deceptive act or practice proximately caused injury to the plaintiff's 'business or property.'" Panag, 166 Wn.2d at 63-64. With regard to causation, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 84, 170 P.3d 10 (2007). And "the

---

[7] The Rainses contend that Duce perjured himself and that Keystone procured his testimony by fraud. The jury made a credibility determination and assumedly found Duce's testimony credibility. On a motion for a judgment as a matter of law, we do not make credibility determinations. Faust v. Albertson, 167 Wn.2d 531, 543, 222 P.3d 1208 (2009). Therefore, we are not persuaded.

injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" Panag, 166 Wn.2d at 57 (quoting Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990)).

Because there was evidence that the Rainses injured Keystone by inadequately managing its finances and overbilling, a reasonable juror could find that Keystone was injured. And because "[p]roximate cause is typically a question of fact for the jury," we will not disturb the jury's finding that those injuries were caused by the Rainses alleged unfair and deceptive acts and practices. Holiday Resort Cmty. Ass'n, 134 Wn. App. at 227.

The Rainses contend that Keystone presented no evidence to support its CPA claim or that the evidence presented was fraudulent. For example, the Rainses contend that (1) Emily did not secretly hire her sister, yet they admit that Rhodes testified that she was not aware that Emily hired Christensen until a significant time after the hiring occurred, (2) Emily did not falsely claim ownership or treasurer status, but Rhodes testified to the contrary, (3) Emily did not overbill Keystone, but Rhodes testified to the contrary, and (4) Emily did not file Keystone's tax returns late, but Rhodes testified that over $10,000 in taxes and penalties were paid after Emily came aboard. In reviewing a motion for judgment as a matter of law, we take evidence and all reasonable inferences in the light most favorable to Keystone and do not make credibility determinations or weigh the evidence. Faust, 167 Wn.2d at 543. Therefore, the Rainses' assertions are unpersuasive.

In short, because we take the evidence and all reasonable inferences in the light most favorable to Keystone, we conclude that Keystone presented substantial evidence sufficient for a reasonable juror to find for it on each element of the CPA claim. Accordingly, the trial court did not err when it denied the Rainses' motion for judgment as a matter of law.

## Motion for a New Trial

The Rainses contend that the trial court erred when it denied their motion for a new trial. We disagree.

We review a trial court's ruling on a motion for a new trial for abuse of discretion. Rookstool v. Eaton, 12 Wn. App. 2d 301, 307, 457 P.3d 1144 (2020). A trial court may grant a motion for a new trial when an "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion," "materially affect[ed] the substantial rights of" the moving party and "by which such party was prevented from having a fair trial." CR 59(a)(1). But trial courts "should grant a mistrial only when nothing the court can say or do would remedy the harm caused by the irregularity." Kimball v. Otis Elevator Co., 89 Wn. App. 169, 178, 947 P.2d 1275 (1997). And "[t]rial courts have broad discretionary powers in . . . dealing with irregularities that arise." Kimball, 89 Wn. App. at 178.

Here, the Rainses point to three supposed irregularities. Specifically, they contend that the trial court erred when it (1) provided jury instruction 5, (2) "unreasonably allocate[d] trial time between the parties[ and] den[ied] Rains . . . an opportunity to present witnesses and exhibits," and (3) allowed Keystone

11

to present "expert witnesses not properly disclosed under [King County Superior Court Local Civil Rule (KCLR) 26], irrelevant evidence, falsified documents, and perjured testimony." We disagree.

First, "[j]ury instructions are reviewed de novo for errors of law," and "'[j]ury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole[,] properly inform the trier of fact of the applicable law.'" Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012) (quoting Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)). "If any of these elements are absent, the instruction is erroneous." Anfinson, 174 Wn.2d at 860. "An erroneous instruction is reversible error only if it prejudices a party." Anfinson, 174 Wn.2d at 860. And "[p]rejudice is presumed if the instruction contains a clear misstatement of law[, but] prejudice must be demonstrated if the instruction is merely misleading." Anfinson, 174 Wn.2d at 860.

Here, jury instruction 5 described an attorney's fiduciary duty to their client. Specifically, the instruction explained that "[t]he fiduciary duty of an attorney toward his or her client includes a duty to render candid advice, avoid a conflict of interest; charge a reasonable fee; avoid engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and acting with reasonable diligence and competence." We agree that the instruction may have been misleading insofar as it discussed a duty that is not relevant to the CPA claim.[8]

---

[8] Keystone disagrees and relies on In re Disciplinary Proceedings Against Dann, 136 Wn.2d 67, 960 P.2d 416 (1998), and WPIC 107.09. However, both In re Dann and WPIC 107.09 pertain to a breach of fiduciary claim against

However, the Rainses do not contend that it is an inaccurate description of an attorney's fiduciary duty. Rather, the Rainses—without citation to legal authority—make only a conclusory assertion that the instruction is an incorrect statement of the law. Therefore, we conclude it is merely misleading.

Because the instruction was misleading, the Rainses must show that it resulted in prejudice. They failed to do so, and we find no evidence of prejudice. The remaining instructions did not allow the jury to premise the Rainses' CPA liability on Emily's breach of fiduciary duty because nowhere else did the instructions mention that duty. See Keller v. City of Spokane, 146 Wn.2d 237, 251, 44 P.3d 845 (2002) (holding that an instruction was inherently misleading and legally erroneous only to the extent that it allows juries to premise liability on an incorrect interpretation of the law). Moreover, as discussed above, without consideration of her duty as an attorney, there was substantial evidence for a jury to find that the Rainses violated the CPA. Therefore, while we find that the instruction was an irregularity, it is not reversible error because the Rainses have not shown prejudice.

Second, the Rainses cite no authority to support their proposition that the trial court improperly deprived them of time and violated their rights to due process. We are not required to search for such case law but may assume that the Rainses were unable to find any. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in

---

an attorney. Because Keystone alleged a CPA violation in this trial, the instruction could be construed as misleading.

support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Nonetheless, we note that, generally, a court "may impose reasonable time limits on a trial," Gen. Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1508 (9th Cir. 1995), and "[t]rial courts have broad discretionary powers in conducting a trial." Kimball, 89 Wn. App. at 178. The Rainses have pointed to no evidence that the time limits placed on them or Rhodes were unreasonable or what, if any, specific evidence or testimony they were unable to present due to such time limits.[9] Therefore, we find no irregularity.

Finally, with regard to Keystone's failure to disclose witnesses, the Rainses provide only a quotation of KCLR 26 and a statement that Keystone did not follow it. They did not provide specific argument on this point, and "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (citing State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)); see also RAP 10.3(a)(6). Moreover, the trial court, at one point, offered the Rainses time to prepare for an allegedly unexpected witness. But the Rainses declined to utilize the time. Therefore, we again conclude there was no irregularity warranting a new trial.

Because we hold that no irregularity at trial prejudiced the Rainses, we conclude that the trial court did not err in denying their motion for a new trial.

---

[9] In fact, when Emily was eliciting the testimony of witnesses, the court below spent a significant amount of time explaining the rules surrounding evidence and its admission.

Cross Appeal

In Keystone's cross appeal, it contends that the trial court erred when it concluded that Keystone received double recovery and offset its damages award. We agree.

The trial court's determination that the damage award for the CPA claim should be reduced by the amount that Emily paid under the breach of fiduciary duty claim is a mixed question of law and fact. Accordingly, "our review is de novo, but we defer to the trial court's factual findings that are supported by substantial evidence." In re Estate of Cordero, 127 Wn. App. 783, 787, 113 P.3d 16 (2005). "It is a basic principle of damages . . . that there shall be no double recovery for the same injury." Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 702, 9 P.3d 898 (2000). However, "[t]he jury is given the constitutional role to determine questions of fact, and the amount of damages is a question of fact." Bunch v. King County Dep't of Youth Servs., 155 Wn.2d 165, 179, 116 P.3d 381 (2005).

Here, both jury instructions included damages for, among other things, "excessive legal and accounting fees," property and services used and not paid for, and "IRS penalties and bank overdraft fees." In the 2014 trial, based on these instructions, the jury found that $88,764.38 resulted from Emily's breach of fiduciary duty while she was employed in-house as an officer of Keystone. The jury also found that $7,685.29 of damages proximately resulted from Emily's breach of fiduciary duty to Rhodes or Keystone. But there is not substantial evidence to support the determination that the jury awarded these same

damages in the 2018 trial.  In fact, the jury in the 2018 trial could have awarded damages for injuries wholly distinct from those awarded in the 2014 trial.

In the 2018 trial, Keystone and Rhodes requested damages of $540,000. The jury awarded Keystone $80,000 based on Emily and Michael's CPA violations.  And the instruction in the 2018 trial also included future economic damages, monies paid that produced no value to Keystone, and the "reasonable value of earnings to Keystone . . . with reasonable probability to be lost in the future if Keystone had remained in business."  Additionally, the 2014 trial included *Emily's* damages to both Rhodes and Keystone.  Here, the jury found that *Emily and Michael* owed damages to only Keystone.  Accordingly, to justify offsetting the damages award, the trial court had to assume that the damages were for the same injury by the same party.  But we do not have substantial evidence to that effect, and "[w]e strongly presume the jury's verdict is correct." Bunch, 155 Wn.2d at 179.  Therefore, we conclude that the trial court erred when it offset the damages in the 2018 trial by the damages award in the 2014 trial.

<u>Attorney Fees and Costs on Appeal</u>

As a final matter, both parties contend they are entitled to attorney fees and costs on appeal.  Because Keystone is the prevailing party, we award it fees on appeal subject to its compliance with RAP 18.1.

For the forgoing reasons, we affirm in part. But we reverse and remand for the trial court to reinstate the full $80,000 damage award on Keystone's CPA claim.

WE CONCUR: