[No. 6909–5–III. Division Three.   May 29, 1986.]

EUGENE L. JACKSON, *Appellant,* v. THE CRIMINAL JUSTICE TRAINING COMMISSION, ET AL, *Respondents.*

*Richard Johnson* and *Prediletto, Halpin, Cannon, Johnson & Scharnikow,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Michael Tardif, Assistant,* for respondents.

THOMPSON, J.—Eugene L. Jackson appeals the trial court's refusal to order a new trial following a jury verdict in favor of the Washington State Criminal Justice Training Commission, et al. We affirm.

In September 1980, Mr. Jackson attended a Commission training session as a security officer with the Yakima County Sheriff's office. The curriculum included a physical force defensive tactics course instructed by Junki Yoshida, a karate expert who had developed police agency training programs in Oregon and other areas in the Northwest. Mr. Jackson was practicing a control technique with a partner when he sustained head and neck injuries rendering him unconscious for a period of time. The technique involved being taken to the floor by a fellow student and rendered immobile by a "sleeper" hold which involved the application of pressure to the carotid artery. The actual execution of the maneuver involved grabbing a person's hair and turning his head slightly while pressing him to the floor in a prone position. The subject's neck was then positioned between the controlling partner's thigh and calf where pressure can be applied by a squatting motion. The final stage of the hold is designed to diminish blood supply to the brain, resulting in unconsciousness.

Mr. Jackson testified he did not remember whether they reached the final stages of the maneuver, *i.e.,* whether any pressure was actually applied to his neck. Fellow students testified they were not in a position to observe what occurred between Mr. Jackson and Edward Maicke, his class partner, until after the injury. Mr. Maicke, however,

testified the "sleeper" was not applied and the injury in fact occurred during the "take–down". The students and Mr. Yoshida testified clear instructions were given that the sleeper should not be applied. Following the incident, Mr. Jackson was hospitalized and testified that he subsequently suffered loss of memory, headaches, depression, and seizures.

Mr. Jackson's negligence action against the Commission, the Department of Corrections, and Mr. Maicke resulted in a jury verdict for the defendants. A motion for judgment notwithstanding the verdict or new trial based on failure to instruct the jury on res ipsa loquitur was denied, and judgment was entered on the verdict. Mr. Jackson appeals.

██ We are first asked to determine whether the trial court erred in refusing to give a res ipsa loquitur instruction. Whether the doctrine of res ipsa loquitur applies is a question of law. *Zukowsky v. Brown,* 79 Wn.2d 586, 488 P.2d 269 (1971); *Brown v. Dahl,* 41 Wn. App. 565, 580, 705 P.2d 781 (1985). The doctrine recognizes that an accident may happen under circumstances that will allow the occurrence itself to circumstantially establish prima facie negligence on the part of the defendant, without further direct proof. *Metropolitan Mortgage & Sec. Co. v. Washington Water Power,* 37 Wn. App. 241, 243, 679 P.2d 943 (1984). Thereupon, the defendant has the duty to come forward with exculpatory evidence rebutting or overcoming the presumption or inference of negligence on his part. *Metropolitan,* at 243. Here Mr. Jackson is seeking a double inference—one, that a sleeper hold was in fact applied, and two, either the take–down maneuver or the sleeper was so negligently conducted as to raise the presumption.

Three criteria must be met before applying the doctrine of res ipsa loquitur:

> (1) the occurrence producing the injury must be of a kind which ordinarily does not occur in the absence of negligence; (2) the injury is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury–causing occurrence must

not be due to any contribution on the part of the plaintiff.

*Brown,* at 580; *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 359, 382 P.2d 518 (1963).

Was the occurrence producing Mr. Jackson's head and neck injuries of a kind ordinarily not occurring absent negligence? Detailed and nonconflicting testimony was offered explaining the nature and pace of the directions given regarding the maneuver as well as the instructor's class supervision and instructions not to apply the sleeper hold. Mr. Yoshida testified no similar injury had occurred in any prior training session, but he clearly communicated to the class the need to proceed with care and the serious risk involved. There was additional testimony from another training consultant that the procedure was inherently difficult to master. Mr. Jackson's medical expert testified although subsequent falls and high doses and combinations of medication could have contributed to Mr. Jackson's condition, his organic brain syndrome and seizures were probably causally related to a "hypoxic event", which would result from application of a choke or sleeper hold.

Proof the injury was caused by application of a sleeper hold would arguably be an act so palpably dangerous that negligence could be inferred, thus satisfying the first element. However, the record supports the conclusion the sleeper was not applied. The take–down portion of the maneuver could have caused injury, even absent negligent execution or instruction. Therefore, the first criterion was not satisfied.

■ Were Mr. Jackson's injuries caused by an instrumentality within the defendants' control? To satisfy the second criterion, not only must the defendant have exclusive control over the instrumentality producing the injury, but there must be a corresponding lack of control by the injured party to take action on his behalf to avoid the injury. *ZeBarth v. Swedish Hosp. Med. Ctr.,* 81 Wn.2d 12, 19, 499 P.2d 1, 52 A.L.R.3d 1067 (1972). Although the instructor and Mr. Jackson's partner were operating within

the guidelines and authority of the Commission, Mr. Jackson did retain some control in responding to or resisting his partner's attempts to execute the take–down. The record is conflicting as to the amount of resistance offered, but the cooperative nature of the maneuver placed him in joint control over its execution. Moreover, members of the class were given the opportunity to opt out of physical participation in the maneuver if they so chose.

Was the accident free from voluntary contribution on the part of Mr. Jackson? No, for the same reasons outlined above. Mr. Jackson had a choice as to whether he (a) participated at all, and (b) limited or increased his resistance to the maneuver. Hence, the trial court was correct in refusing to instruct the jury on the doctrine of res ipsa loquitur. Since there was no basis for allowing a new trial, there was no abuse of discretion.

Finally, Mr. Jackson contends he should not be responsible for the cost of transcribing additional medical testimony requested by the Commission and ordered by the trial court pursuant to RAP 9.2(c). A party seeking review may file a partial verbatim report of proceedings; however, any other party may then add to the verbatim report. RAP 9.2(c).

> If the party seeking review refuses to provide the additional parts of the verbatim report of proceedings, the party seeking the additional parts may provide them at the party's own expense *or apply to the trial court for an order requiring the party seeking review to pay for the additional parts of the verbatim report of proceedings.*

(Italics ours.) RAP 9.2(c). Upon application, the trial court may correct or supplement the report of proceedings, RAP 9.9, and "may direct the party seeking review to pay for the expense of any modifications of the proposed report of proceedings". RAP 9.5(a). Moreover, whether the record should be supplemented is discretionary with the trial court. "[T]he judge can direct such additions as he deems necessary to present fully the questions to be raised on the appeal." *Palin v. General Constr. Co.,* 45 Wn.2d 721, 727,

277 P.2d 703 (1954). If a party has incurred an expense for preparation of the verbatim report of proceedings, the item is presumed to have been reasonably necessary for review, although the presumption is rebuttable. *See* RAP 14.3(a).

Here, the limited report of proceedings Mr. Jackson originally submitted was arguably not sufficient to infer negligence, given the ambivalent nature of his injuries. The trial court did not abuse its discretion.

Affirmed; costs are assessed accordingly.

McINTURFF, A.C.J., and MUNSON, J., concur.