

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | No. 37982-5-III |
| GARY RAY BLAKEY, | ) | |
| | ) | |
| Deceased. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

SIDDOWAY, A.C.J. — Keith Foris appeals an award of attorney fees imposed

against him in consolidated probate and TEDRA[1] proceedings involving the estate of

Gary Ray Blakey. He also challenges the trial court's order that he pay for the

preparation of verbatim reports of proceedings (VRPs) ordered by his adversary to

supplement the record on appeal. We affirm.

FACTS AND PROCEDURAL BACKGROUND

*Admission of will to probate, TEDRA petition, and appointment of the original*
*personal representative*

Keith Foris and his wife, Jody Foris, were named as the sole beneficiaries under a

will that their longtime neighbor, Gary Ray Blakey, executed in 2008. Mr. Blakey's

primary asset was his home in Silverdale, which is next door to the Forises' home. Mr.

Blakey's will named Mr. Foris as executor.

---

[1] Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW.

In January 2016, Mr. Blakey executed a new will, in which he revoked the 2008 will and named his friend Joe Divine as personal representative (PR) and sole beneficiary. Mr. Foris was named by the new will as alternate PR and as the sole beneficiary in the event Mr. Divine did not survive Mr. Blakey by 60 days.

Mr. Blakey died on April 24, 2016. Mr. Foris and Mr. Divine were aware of both wills and evidently began settlement discussions through counsel shortly after his death. When they had not reached a resolution by June 9, 2016, Mr. Foris filed a petition acknowledging the existence of both wills but asking that the 2008 will be admitted to probate and that he be appointed PR. Addressing the 2016 will, he asserted that Mr. Divine was not qualified to serve as PR because he had been convicted of a felony.[2] The following day, Mr. Foris filed a TEDRA petition seeking an order admitting the 2008 will to probate, appointing him PR, and authorizing him to take certain actions as PR.

Mr. Divine and C. Conrad Green, a retired attorney that Mr. Divine proposed serve as PR, promptly filed a response challenging Mr. Foris's petition. Mr. Green separately filed a counter-petition to have the 2016 will admitted to probate and to be appointed as PR. Messrs. Green and Divine conceded that Mr. Divine could not serve as

---

[2] Mr. Divine pleaded guilty in 2003 to DV (domestic violence) second degree assault and criminal attempt. He pointed out in the proceedings below that he paid all his fines, completed domestic violence counseling, otherwise complied with the terms of his sentence and probation, and his civil rights and gun rights were restored in 2004 and 2012, respectively.

PR, but contended that Mr. Foris also could not serve, for two reasons: they accused Mr. Foris of having breached his fiduciary duty by seeking to have the 2008 will admitted to probate, and alleged on information and belief that Mr. Foris had a conflict of interest because he intended to challenge the 2016 will.

At three hearings taking place between June and October 2016, the trial court readily determined that the 2016 will rather than the 2008 will should be admitted to probate, recognizing that a will contest might later be filed. It consolidated the several proceedings. The more difficult issue was whether Mr. Foris would be appointed PR.

Mr. Divine argued that the court should "[m]ake no mistake about it, this has been a will contest from day one." Report of Proceedings (RP) (Oct. 17, 2016) at 37. He contended that Mr. Foris's "fallback position," if unable to invalidate the 2016 will, was for Mr. Foris and his lawyer "to try to find as many creditors as they can, which would force the sale of the house." *Id.* at 38. Mr. Divine's lawyer reported to the court that in his first conversation with Mr. Foris's lawyer, he asked why Mr. Foris was "so driven to ferret out creditors," and counsel responded, "Look, you wouldn't want to live next to Joe Divine." *Id.* at 40. Counsel for Mr. Divine argued that Mr. Foris could not be trusted to close what should be a simple estate in an expeditious and economical matter.

For his part, Mr. Foris stressed the fact that Mr. Blakey's wills exhibited his continuing intent that Mr. Foris, with whom he had enjoyed a good relationship, serve as PR or alternate PR. He argued that Mr. Blakey's intent should be honored. He denied

3

any intent to run up fees in order to force a sale of the Silverdale house. His lawyer said that if the court "had a sense of that, I would expect Your Honor to deny those fees, and Mr. Foris would be on—would be paying that bill." *Id.* at 45.

The trial court expressed concern to Mr. Foris's lawyer that there appeared to be "some tension" between Mr. Divine and Mr. Foris, and asked if Mr. Foris would be able to fulfill his duty to act for the benefit of Mr. Divine, the sole beneficiary. *Id.* at 46. Counsel responded that he did not think tension was "a bad thing," and possibly Mr. Blakey named Mr. Foris his alternative PR because he "want[ed] to make sure [his] neighbor of 12 years has some involvement" in the estate administration. *Id.* at 47.

The trial court ultimately appointed Mr. Foris to serve as PR, explaining that while it had concerns, it "[had not] seen any sort of true overt act to indicate that a will contest is going to be filed." *Id.* at 50. It stated it had not seen enough to disregard Mr. Blakey's intent that Mr. Foris be the alternative PR, but it would retain intervention powers. The court concluded that "what I don't want to have is what [Mr. Divine's lawyer] has alleged may occur," "[a]nd Mr. Foris' job is to move that probate along in conforming with what Mr. Blakey desired." *Id.* at 50-51.

*Removal of Mr. Foris as PR and other relief granted in 2019*

Almost three years later, the trial court addressed requests by Mr. Divine that it remove Mr. Foris as PR and appoint a successor, and for other relief. The trial court

4

granted the requested relief, making findings to which no error is assigned on appeal.

Among them were the following:

- During Mr. Foris's service as PR, he filed a motion to procure chimney, electrical and septic investigations of the estate's Silverdale property, to require Mr. Divine to sign a lease, to evict a friend of Mr. Divine's who was living at the property, to require the removal of the friend's trailer from the property, and to conduct an inventory. All relief other than the inventory request was denied.

- Following entry of an order permitting Mr. Foris to conduct an inventory, he made an inventory inspection of the estate property but failed to provide any written inventory thereafter.

- After reviewing status updates, supplements, and the court file, "the Court finds that after his appointment as PR, Mr. Foris violated the fiduciary duties he owed to Mr. Divine and has made little if any effort to administer the Estate and has caused needless waste. Accordingly, Mr. Foris' Letters Testamentary should be revoked and cancelled." Clerk's Papers (CP) at 578-79.

- In March 2017, Keith and Jody Foris filed creditors' claims based on alleged loans to Mr. Blakey totaling almost $22,000. The claims were unsupported by documentation other than title to a 1964 Pontiac LeMans in the names of Mr. Blakey and Mr. Foris that the Forises characterized as having been provided as security. The court found that the statute of limitations for collecting the alleged loans had run. It found that the Pontiac LeMans, as an asset co-owned by Mr. Blakey and Mr. Foris, should be administered in the estate.

- The Forises had submitted an undocumented claim for attorney fees and costs, alleging they had incurred almost $22,000 in fees and costs through March 20, 2017, and in an unidentified amount thereafter. The court denied the claim for attorney fees and costs.

- The Forises had stored a number of items of personal property on the estate's Silverdale property, including a tractor and attachments, a utility trailer, and a boat, with no demonstration of any right to do so.

5

- Mr. Foris or his law firm had possession of Mr. Blakey's life insurance proceeds, a tax refund for the 2015 tax year and funds from accounts held by Mr. Blakey, and had provided no accounting.

- The time for filing any will contest had expired.

CP at 579-80.

The court dismissed Mr. Foris's TEDRA action, declared the estate solvent, and appointed Patricia Markwick as successor PR.

Mr. Divine had requested an order awarding him his attorney fees in the matter and the trial court entered his proposed order, but with the following handwritten modification:

ACT ⟨ST⟩ 2.21 Joseph Divine is entitled to an award of attorney's fees against Mr. and Mrs. Foris ~~arising from the frivolous and hostile actions of Mr. Foris through~~ for ~~fees incurred~~ by Mr. Divine ~~in this matter through~~ the entry of this Order in an amount to be determined at a subsequent hearing.

CP at 581. Mr. Foris timely appealed the court's order.

At a subsequent hearing, the trial court awarded Mr. Divine $31,453.50 in attorney fees, slightly less than the $32,695.00 he had requested. It awarded Mr. Divine $667.51 he had paid to obtain a copy of medical records that Mr. Foris obtained early on, when Mr. Foris was investigating the possibility of a will contest. It denied without prejudice Mr. Divine's request that the Forises pay him $27,658.00 as fees for their unauthorized storage of personal property on the estate property.

The court's judgment described the basis for the attorney fee award as follows:

6

> The attorney's fees arise from Keith Foris' failure to carry out his responsibilities as the Personal Representative of the Estate of Gary Ray Blakey, his frivolous and hostile actions against Joseph Divine and needless Motions resulting in needless attorney's fees incurred by the Estate and Joseph Divine.

CP at 756.

*Costs of VRPs to supplement the record on appeal*

When Mr. Foris filed the statement of arrangements for his original appeal, he disclosed that the only hearing he requested be transcribed was the September 27, 2019 hearing on his removal as PR and other relief requested by Mr. Divine. The following day, Mr. Divine's attorney e-mailed Mr. Foris's attorney and pointed out that Mr. Foris requested only a partial report of proceedings without including a statement of the issues he intended to present on review, as required by RAP 9.2(c). Noting that Mr. Divine had only 10 days within which to arrange for transcription of additional proceedings, Mr. Divine's lawyer asked Mr. Foris to either have everything transcribed or identify the issues he would present on review.

When nothing was received in response, Mr. Divine timely filed a statement of arrangements for the transcription of additional hearings. His statement of arrangements disclosed that he would pay for the transcriptions if necessary, "but will be seeking an order from the trial court to compel Appellant to pay pursuant to RAP 9.2(c) if Appellant does not agree to pay for the transcripts." CP at 735. In a contemporaneous letter to Mr.

Foris's lawyer, Mr. Divine's lawyer reiterated his intention to seek court-ordered

reimbursement if Mr. Foris did not agree to pay the cost. He received no response.

In January 2020 Mr. Divine, as forewarned, filed a motion with the trial court

seeking reimbursement for the cost of the supplemental VRPs. Mr. Foris filed an

objection in which he represented that the additional hearings had no relevance to the

issue Mr. Foris planned to appeal, without identifying the issue he planned to appeal.

When the motion was heard, Mr. Divine argued that he expected Mr. Foris to

challenge the award of attorney fees, and the additional hearings he caused to be

transcribed were relevant to the trial court's decision to award fees. Mr. Foris expressed

confidence that the only hearing that would be relevant to his appeal was the September

27, 2019 hearing, but if the Court of Appeals believed other proceedings were relevant it

could order supplementation. Mr. Foris also disclosed that he had already paid to have

most of the earlier hearings transcribed and was willing to provide Mr. Divine with

copies.[3] Mr. Divine expressed frustration that this was not disclosed before he was

---

[3] The VRPs filed with this court reflect that at least four of the eight had been prepared and were in Mr. Foris's possession at the time Mr. Divine asked that additional hearings be transcribed.

Transcripts of the hearings taking place on June 17 and July 1, 2016, were certified on July 12, 2016. RP (June 17, 2016) at 24; RP (July 1, 2016) at 18. A transcript of the hearing taking place on February 13, 2017, was certified on September 12, 2019. RP (Feb. 13, 2017) at 21. A transcript of the hearing taking place on September 16, 2019, was certified on September 24, 2019. RP (Sept. 16, 2017) at 34.

A transcript of the hearing taking place on October 17, 2016, was not certified until November 27, 2019. RP (Oct. 17, 2019) at 53.

required to file his own statement of arrangements and order the additional VRPs in November 2019.

The trial court found that the Court of Appeals would benefit from having a more complete report of proceedings, to better understand why it made its rulings.  It ordered Mr. Foris to bear the cost of the supplemental VRPs.  Mr. Foris challenged the order in a supplemental notice of appeal.

## ANALYSIS

Mr. Foris makes two assignments of error that we address in the order presented.

I.    ASSIGNMENT OF ERROR 1

*The trial court abused its discretion in requiring Mr. Foris to pay Mr. Divine's attorney fees and costs as sanctions for filing "frivolous and hostile" motions*

Mr. Foris's opening brief begins his argument of this assignment of error with what struck the panel as a puzzling analysis of five different legal bases[4] on which Mr. Divine might have requested an award of attorney fees from the trial court.  The analysis is puzzling because anyone with passing familiarity with Title 11 RCW would assume attorney fees were requested and awarded under RCW 11.96A.150, which grants courts

---

Mr. Foris ordered a transcript of the hearing taking place on September 27, 2019, and later, the hearing taking place on January 17, 2020.  Those transcripts were certified on October 9, 2019, and February 3, 2020, respectively.  RP (Sept. 27, 2019) at 26; RP (Jan. 17, 2020) at 62.

A transcript of the hearing taking place on November 8, 2017, does not reflect a date of preparation or transcription.  RP (Nov. 8, 2017) at 4.

[4] He analyzes CR 11, RCW 2.28.010, RCW 4.84.185, RCW 7.21.050 and RCW 11.96A.150.  Opening Br. of Appellant at 15-27.

broad discretion to award costs, including reasonable attorneys' fees "to any party . . . [f]rom any party" to the proceedings.

It soon becomes clear that this analysis is in aid of a "straw man" argument by Mr. Foris. Taking the position that the basis for Mr. Divine's request for a fee award was never clear and he must have been seeking fees as a sanction under CR 11, Mr. Foris argues that Mr. Divine failed to comply with the rule. Accordingly, Mr. Foris argues, the fee award must be reversed.

Mr. Divine never cited CR 11 as a basis on which he sought an award of attorney fees and the trial court never identified it as a basis on which fees were awarded.[5] A word search of the clerk's papers reveals that even the word "sanction" was never used. As Mr. Divine points out, while he never cited RCW 11.96A.150 in his written submissions, he did say in oral argument that he was seeking statutory fees under TEDRA. *See* RP (Jan. 17, 2020) at 9 ("The TEDRA . . . petition was dismissed. And

---

[5] As Mr. Divine points out, we could refuse to review this argument on the basis that it was never raised in the trial court. *See* RAP 2.5(a). Mr. Foris counters that a denial of the procedural guarantees associated with a CR 11 motion is a denial of due process and manifest constitutional error reviewable under RAP 2.5(a)(3). But Mr. Foris had notice of the fee request and exercised his opportunity to file a brief and argue in opposition to the motion. He could have, but did not, advance any argument based on CR 11. His "denial of due process" argument is the type of "'[n]aked casting[ ] into the constitutional seas'" that are not sufficient to command judicial consideration and discussion. *State v. Johnson*, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014) (first alteration in original) (quoting *State v. Blilie*, 132 Wn.2d 484, 493 n.2, 939 P.2d 691 (1997)). In any event, the new argument is easily dismissed and we exercise our discretion to address the merits.

under the statute, that's what gives you the right to award attorneys' fees. So technically, you could award every fee that I charged in this thing, with the exception of the one that I agreed was going to be pro bono.").

Mr. Foris contends in reply that he is not contending that RCW 11.96A.150 did not apply at all. Instead, he argues that the trial court lacked authority to award attorney fees under RCW 11.96A.150 as a sanction for filing frivolous motions in the absence of a CR 11 motion. He cites *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339-40, 858 P.2d 1054 (1993), for the proposition that "the inherent power of the court [to impose a sanction] should not be resorted to where rules adequately address the problem."

In awarding attorney fees, the trial court did not rely on its *inherent* authority to sanction; it exercised its *statutory* authority to award fees under RCW 11.96A.150. And Mr. Foris's contention that without a corresponding CR 11 motion, RCW 11.96A.150 was an insufficient basis for awarding fees for bad litigation behavior directly conflicts with the plain language of the statute. "The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable" and in doing so, "may consider any and all factors that it deems to be relevant and appropriate." RCW 11.96A.150(1). Moreover, TEDRA provides that "[a] judicial proceeding under this title is a special proceeding under the

civil rules of court. The provisions of this title governing such actions control over any inconsistent provision of the civil rules." RCW 11.96A.090(1).

The court's consideration of the frivolous and hostile nature of Mr. Foris's actions is not inconsistent with RCW 11.96A.150(1). Mr. Divine did not rely on CR 11 in requesting an award of attorney fees nor was he required to rely on it. RCW 11.96A.150(1) provides a basis for the attorney fee award, and Mr. Foris does not challenge the reasonableness of the amount awarded.[6]

## II.     ASSIGNMENT OF ERROR 2

*The trial court abused its discretion in requiring Mr. Foris to pay for preparation of portions of the transcript requested by Mr. Divine where those portions were not relevant to any issue Mr. Foris raised on appeal*

The party claiming error holds the burden to provide an adequate record for our review. *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012). Mr. Divine's lawyer reminded Mr. Foris of RAP 9.2(c) before ordering additional VRPs. The rule provides in relevant part:

> If a party seeking review arranges for less than all of the verbatim report of proceedings, *the party should include in the statement of arrangements a statement of the issues the party intends to present on review. . . .* If the party seeking review refuses to provide the additional parts of the verbatim

---

[6] Mr. Foris makes a passing, conclusory argument that RCW 11.28.250, which authorizes the court to revoke a PR's letters for, e.g., waste or mismanagement, thereby *limits* the court to the remedy of removal. No textual reasoning is provided. Contentions that are unsupported by reasoned argument do not merit appellate review. RAP 10.3(a)(6); *Christian v. Tohmeh*, 191 Wn. App. 709, 728, 366 P.3d 16 (2015).

report of proceedings, the party seeking the additional parts may provide them at the party's own expense or apply to the trial court for an order requiring the party seeking review to pay for the additional parts of the verbatim report of proceedings.

(Emphasis added.)

Whether the record should be supplemented is discretionary with the trial court. *Jackson v. Crim. Just. Training Comm'n*, 43 Wn. App. 827, 831, 720 P.2d 457 (1986). When a reviewing party who orders a partial report identifies the issues it will present on review, the judge can direct such additions as she or he deems necessary to present fully the questions to be raised in the appeal. *Id.* If the party seeking review fails to comply with RAP 9.2(c)'s requirement to identify those issues, we will not assess the need for supplementation with the benefit of hindsight, based on the issues ultimately raised. Instead, we will find an abuse of discretion only if no reasonable court could find that additional parts of the record might be necessary to present or respond to issues that could foreseeably be raised on review.

As a threshold matter, Mr. Foris denies he had any responsibility to identify the issues he would present on appeal, arguing that RAP 9.2(c)'s language that the party seeking review "*should* include . . . a statement of the issues the party intends to present" is permissive. He cites case law arising in other contexts. The rules of appellate procedure (RAPs) are explicit about the meaning of "should" in the context of the RAPs, however. "'Should' is used when referring to an act a party or counsel for a party is

*under an obligation* to perform. The court will ordinarily impose sanctions if the act is not done within the time or in the manner specified." RAP 1.2(b) (emphasis added).

Mr. Divine and the trial court reasonably expected that Mr. Foris would challenge the award of attorney fees. They did not foresee that he would raise only a technical issue and make no effort to defend the reasonableness of his litigation behavior. Given the information available to the trial court, it did not abuse its discretion in concluding that this court should have the benefit of the hearings at which Mr. Foris advanced the positions found to be frivolous and hostile.

Both parties request an award of reasonable attorney fees and expenses on appeal under RAP 18.1(a) and RCW 11.96A.150. We award reasonable attorney fees and expenses to Mr. Divine, subject to his timely compliance with RAP 18.1(d).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____    _____
Lawrence-Berrey, J.                  Staab, J.